ISAAC A. WALLER ET AL. *v.* HORACE E. ELLIS
[No. 25, April Term, 1935.]

*Decided May 23rd, 1935.*

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, and SHEHAN, JJ.

*F. W. C. Webb*, with whom were *Carroll E. Bounds, William W. Travers*, and *Woodcock & Webb*, on the brief, for the appellants.

*J. Edgar Harvey*, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Edna May Ellis, the person most vitally interested in this proceeding, is the daughter of Charles Ellis and Nora Waller Ellis, his wife. Her mother died in May, 1930, and her father in December, 1930. She was born June 6th, 1922, and lived with her parents at their home in Sussex county, Delaware, until she was taken by her father to the home of her mother's parents, Isaac A. Waller and Lilly E. Waller, his wife, who died pending the suit, who lived in Wicomico county, Maryland, and she has been at that home since then.

At his death Charles Ellis left to survive him a brother Horace E. Ellis, a bachelor, now about sixty-two years of age, a brother Lee Ellis, now about sixty-five, and an unmarried sister, Mary Elizabeth, now about sixty-four, who lived together at the home of Horace.

On September 5th, 1931, Horace filed in the Circuit Court for Wicomico County a petition in which, after setting out in substance these facts, he alleged: "That his said brother, Charles Ellis, prior to and at the time of his marriage, made his home with your petitioner and that upon the marriage on August 4, 1915, of his said brother to his said wife, your petitioner erected for them, near his home and upon his said premises, where, from the time of their marriage until the death of his said

wife on May 12th, 1930, they continued to live, and it was here that Edna May was born and lived. * * * That Edna May Ellis, while her father and mother were living, was frequently in your petitioner's company and around and with him, and that your petitioner has a fatherly interest in and attachment for her, and that it is his wish and desire to adopt her that she may have the same rights of inheritance and distribution as to his estate, and all other rights from him, as if his own child and as if born to him in lawful wedlock, and that his sister, Mary Elizabeth Ellis, who lives with him, would be pleased by the adoption of the said Edna May by your petitioner." Upon those allegations he prayed that Edna May Ellis be declared to be his adopted daughter. Accompanying the petition was an affidavit made by acquaintances of the petitioner that he was a man of substance, highly respected, interested in the welfare of his community, and that the "best interests and welfare" of the child would be promoted by the adoption.

The respondents Mr. and Mrs. Waller did not share the favorable opinion expressed by these affiants. On the contrary, they alleged that Charles Ellis had paid in full or in part for his home and was entitled to a conveyance thereof from Horace, who had wrongfully refused it, and that Horace intended to defraud Edna May of her interest therein; that he is "a man without principle and without ordinary human kindness and sympathy and is not a fit person to have custody and control of the said Edna May Ellis, or any other child; that for many years he has cruelly mistreated and beaten members of his household, including his own brothers and sister; and his brother, the said Lee Ellis, is a feeble-minded person. * * * That the said Charles Ellis, after the death of his said wife on May 13th, 1930, and after he returned to live with his brother, the said Horace E. Ellis, became so despondent that he later became insane, and, although the said Horace E. Ellis knew of his brother's serious condition, having heard him on several occasions threaten to

take his own life, nevertheless, the said Horace E. Ellis neglected to provide proper medical care and attention for the said Charles Ellis and the latter committed suicide by shooting himself on December 26th, 1930." They further alleged that not only was Edna May Ellis entitled to an interest in the home place of her father, but that she also owned an undivided interest in the property occupied by Horace, and that he notwithstanding his professions of fatherly interest in and attachment for her was motivated by a "purpose of keeping" that property under his own control; that he refused to turn over to the respondents Edna's clothing and playthings and had contributed nothing to her support after the death of her parents; and that "they are now the natural guardians of the said Edna May Ellis, who is of sufficient intelligence and capacity to give an understanding assent, and who has expressed her desire and intention to live with them and her intention not to return to live with the said Horace E. Ellis, and without the consent of your respondents, and of the said Edna May Ellis, your honors are without authority to grant the prayer of the petitioner of the said Horace E. Ellis."

Separate answers were filed by the guardians, and on these pleadings the case was at issue on October 10th, 1931.

On August 27th, 1932, the petitioner applied for an order to take testimony orally before the court, and on that petition the case was set for testimony "as prayed" on August 31st, 1932. On the day set these witnesses were called and testified for the petitioner: Horace E. Ellis, L. Pratt Cooper, Mary Elizabeth Ellis, John S. Cooper, Joseph L. Phillips, E. Thomas Kenney, Mrs. Annie West Tomlinson, Mrs. Etta Dryden Baker. Their testimony, however, was never filed as a part of the proceedings, as required by Code, art. 16, sec. 278; nor is there anything in the record to show that it was even written down.

In September, 1932, respondents filed a motion to dismiss the petition on the grounds: (1) That the petitioner was a nonresident; (2) that Isaac A. Waller had not approved the adoption or consented thereto; (3) that Edna May, a minor, was of sufficient intelligence and capacity to give an understanding assent, but had not given her consent and approval; and (4) that her guardians had not given their consent and approval. No direct action on that petition was taken by the court, but the effect of the decree was to overrule it.

On September 2nd, 1932, witnesses were called for the respondents, and their testimony, which is the only testimony found in the record, was filed in the case on November 16th, 1932. On November 30th, 1932, the respondents applied for leave to take further testimony, but no action was taken on it until November 30th, 1934, when it was overruled, and on the same day a decree of adoption was signed. On January 22nd, 1935, the guardians of Edna, the permission of the court having first been obtained, and Isaac A. Waller, took this appeal.

The principal question submitted by the appeal is whether upon the evidence properly before it the trial court erred in decreeing that Edna May be declared to be the adopted child of Horace E. Ellis.

In dealing with that question this court is not at liberty to consider the testimony of the petitioner's witnesses because, if it was "written down as delivered by the witnesses" as the statute explicitly directs, it was not filed in the case, forms no part of the record, and is not before this court. *Addison v. Bowie*, 2 Bl. 584; 21 *C. J.* 553. It was incumbent upon the trial court to see that the petitioner complied with the statute, and if he failed or refused to file a transcript of the testimony taken, under Code, art. 16, sec. 278 *et seq.*, his petition should have been dismissed for failure to prosecute, just as though he had failed or refused to file any testimony at all in support of the petition. He elected to proceed under that statute, he was bound to comply with its provisions, and

since he filed no testimony the case may be disposed of as on petition and answer, in which case the allegations of the answer may be taken as admitted.

It is not necessary, however, to dispose of the case upon presumed admissions, for the evidence of the respondents which is in the case clearly shows the impropriety of the order of adoption.

At the time the petition was filed, Edna was a little girl nine years old, living with her maternal grandparents, to whose custody she had been committed by her father after her mother's death, and shortly before his own, and he took her there only after he had several times requested Mrs. Waller "to take her," and after he had said that he "did not want her raised back there," meaning apparently in Delaware.

Mr. and Mrs. Waller were substantial and highly respected citizens of Wicomico County, who had been successful in so rearing their own children as to merit the approval of their neighbors, and since the child has been with them they have fed her, clothed her, provided for her attendance at school, and given her the care and attention which would be expected of careful and affectionate parents; she was satisfied to be with them; they were glad to have her, and wanted to keep her. There was neither at that time nor later any apparent reason to disturb that arrangement.

Such was the situation when the petition in this case was filed.

The petitioner lives in Providence, Sussex County, Delaware, and was then fifty-eight years old. He is unmarried and lives with an unmarried sister and a feebleminded brother, then aged sixty and sixty-one, respectively. The precise nature of the disorder from which Lee Ellis, the brother, suffers is not shown, but enough is shown to indicate that his presence was likely to add little that was helpful to the atmosphere of a home in which a child of such tender years was expected to live.

Jackson L. Reddish, when asked about him, gave this testimony: "Q. Do people in the community have any trouble with him? A. Yes, sir. Q. What trouble? A. Well, Miss Mary Angle who lives next to me he was botherin' her a right smart and she had to call the sheriff. Q. What kind of trouble? A. She is a widow lady and she was afraid of him. Q. Would you say he is a normal person or not? A. I don't think there is any harm in him in anyway. He has kind of a peculiar way and she was afraid of him. * * * Q. Isn't it a fact that up in that community where he lives that he is known to be without harm or malice toward anyone? A. He never done any harm that I know of. Q. As a matter of fact, he is generally regarded that way, isn't he? A. Yes, sir. Of course, you take a widow lady and no one to protect her it makes a right smart of difference. Q. I mean Mr. Reddish, as far as the people in that community are concerned? A. Take the widow Hearn. Q. Not dealing with any specific instances, but generally? A. They rather he would not be bothering around than to be bothering around. Q. No one is afraid of him, is there? A. I cannot say that."

It also appears that Horace admitted that Charles Ellis, his brother, and Edna's father, paid a part of the construction cost of property which in his petition he alleges he erected on his own property, and it is alleged in one of the answers to his petition that Edna owns an undivided interest in his (Horace's) home property.

There is nothing in either the testimony or the pleadings which reflects in any way upon Miss Mary Elizabeth Ellis, the petitioner's sister, nor indeed is she referred to in connection with any material fact, except that she accompanied Charles when he left Edna with her grandparents.

At the conclusion of respondents' testimony, they offered Edna as a witness; but the court refused to permit her to be offered, saying, "We will not offer her in open court." He did not, however, suggest any other method or

afford any other opportunity of ascertaining her wishes. The child at that time was ten years old, had been attending school for about two years, and there was not the slightest intimation that she was lacking in intelligence or the capacity normal to one of her age.

Code, art. 16, secs. 74, 75, fix the venue, the procedure, the jurisdiction, and the condition for the adoption of a child in this state. Section 76 reads as follows: "The effect of such decree of adoption shall be to entitle the child so adopted to the same rights of inheritance and distribution as to the petitioner's estate, and the same rights of protection, education and maintenance as if born to such petitioner in lawful wedlock, and the natural parents of such child shall be freed from all legal obligation towards it. * * * "

It is assumed in the motion to dismiss (1) that under the adoption statute the courts of this state are without jurisdiction to entertain an application filed by a nonresident for the adoption of a child domiciled therein, and (2) that the consent of the parents or guardian of the child and of the child to the adoption is essential to jurisdiction. But the statute prescribes no such conditions. It provides that the application may be made by "any person" residing in the city or county where it is made, or "where a minor to be adopted resides." Section 74. It contains no requirement that the applicant be a resident of the state, but it clothes the court with ample power to make such an investigation as will adequately protect the child's interests.

In *Foster v. Waterman*, 124 Mass. 592, it was held that a similar statute did not authorize a nonresident to file such an application, because the proceeding was statutory and not according to the usual course at common law or in chancery. But we are not able to follow that decision in the construction of this statute. Since the whole purpose of the statute is to insure the welfare of the infant, it is not apparent why in a proper case that end may not be as well served upon the application of a

nonresident as by that of a resident. Residence is not fixed, but may be changed at will. The nonresident may move into the state after the decree, or the resident may move out, and the effect of the decree would not necessarily depend upon either event. It is the character of the adoptive parent, and not his residence, which should and does concern the court. Under the statute adopted in this state the proceeding is judicial rather than administrative, and the courts ordinarily are open to nonresidents as well as to residents. The power is statutory, it is true, but the power of courts of equity to grant divorces is also statutory. *Nelson on Marriage & Divorce,* sec. 19; *Outlaw v. Outlaw,* 118 Md. 498, 84 A. 383. Yet it would hardly be contended that such a court lacked jurisdiction to entertain such a suit upon the complaint of a nonresident, if the defendant was within the jurisdiction.

Such statutes as this should be construed liberally to aid, rather than hamper and frustrate, their benevolent purpose, and their application should not be restricted by any forced or narrow construction. *In re Bradley's Estate,* 185 Wis. 393, 201 N. W. 973. That view of the effect of residence upon jurisdiction finds some support in the *Restatement of Conflict of Laws, Amer. L. Inst.,* sec. 142, where it is said: "The status of adoption is created by either: (a) the law of the state of domicil of the adopted child; or (b) the law of the state of domicil of the adoptive parent if it has jurisdiction over the person having legal custody of the child or if the child is a waif and subject to the jurisdiction of the state." And in *Rizo v. Burruel,* 23 Ariz. 137, 202 P. 234, 236, what seems to be the more reasonable view is thus stated: "It is claimed by appellant that, inasmuch as he, his child, and the petitioners to adopt are all citizens of Mexico, the court has no jurisdiction, under chapter 17, tit. 6, Civ. Code 1913, entitled 'Adoption,' to decree an adoption; it being contended that the provisions of said chapter do not apply to alien residents in Arizona. We

find no such limitation expressed in said chapter, nor are we aware of any good reason why the power of the courts of the state should not extend to the protection, care, and disposition of minor children of foreign birth as well as native born."

The proceeding deals primarily with status, and only incidentally with custody. Once the issues involved in it are adjudicated, the jurisdiction of the court under the statute is at an end, and upon the passage of a decree of adoption the relation between the adopting petitioner and the child is, so far as they are affected, that of parent and child, and the petitioner thenceforth has the same right to its custody and government that a natural parent would have. There is therefore no apparent reason why the residence or nonresidence of the petitioner should be a condition precedent to jurisdiction unless the statute makes it so. And since it does not, that objection to the jurisdiction may be disregarded.

The contention that the assent to and approval of the grandparents, the guardians, and of the child itself, to the adoption are essential to jurisdiction, is without merit. While the statute requires that the parents or guardians be notified, it gives them no power to arbitrarily forbid the adoption, but leaves to the court the power to permit or deny it accordingly as it determines upon careful investigation that the one course or the other will best serve the interests of the child. It requires the assent of the child, but only if it be of sufficient intelligence and capacity to give an understanding assent—a fact which itself must necessarily be found through the exercise of judicial functions.

Apart from the expressed desire of the petitioner, the record is quite free of any proof justifying the inference that the interests of the child would be served by the adoption. Nor does the conduct of the petitioner in the prosecution of this proceeding indicate that in his judgment the welfare of his niece is in jeopardy while she is in the custody of her grandfather. He permitted nearly

a year to elapse before he offered any evidence in support of his petition, and then after the testimony taken by the respondents had been filed, more than two years passed before the court acted on it. It is true that during that period the papers were either in the hands of the chancellor or of the clerk, but the petitioner neither submitted for decree, asked for a hearing, nor did any other thing to expedite a decision.

There are also apparent in the decree itself infirmities which affect its validity. It recites that Horace E. Ellis, the petitioner, had been heard in open court, and that the proceedings had been read and considered. It does not recite that the parties had been heard, or that they had been given an opportunity to be heard, and the docket entries indicate that the case neither was set for a hearing nor the respondents heard. But as the proceedings were plenary, and respondents had suggested to the court in their pleadings facts which if true would justify the conclusion that the adoption would menace the welfare of the child, they were entitled to be heard, and it was error to deny them that privilege.

In the course of the proceedings, respondents offered the child as a witness but the offer was refused. It should have been allowed. The statute prescribes as a condition precedent to a decree of adoption that the child "if of sufficient intelligence and capacity to give an understanding assent" (section 74) must itself desire the adoption. Whether she possessed that intelligence and capacity could, in view of her age, have best been determined by examining her, either when she was offered, or at least before the decree, which was signed more than two years later.

Nor is there any justification in the facts for the adoption. It was opposed by the child's guardians and by her grandparents, who by their conduct had shown their affection for and their interest in her welfare. So far as the record shows, with them she was happy and well cared for. Their solicitude was based both upon blood

and affection. They were substantial and respectable, their home was decent, they were able to support and care for her, and she had been committed to their care by her father.

This is not, it is true, a proceeding necessarily immediately affecting the custody of the child, but her adoption, but its manifest purpose is to establish a relation which would give the petitioner a claim to her custody, otherwise it is upon the facts without point.

The effect of the decree was to establish the relation of parent and child between Edna and a man whose interests are hostile to her own, who had not until this proceeding shown any interest in her welfare, and to clothe him with the *prima facie* right to her custody, with the probable result that she would be taken from the only home she has known since her father's death and placed in a home where her only companions would be the petitioner, his feeble-minded brother, and an aunt, all of whom are over sixty years of age.

Those facts furnished no ground for the relief prayed and the petition should have been dismissed.

The decree appealed from must therefore be reversed.

*Decree reversed, with costs, and petition dismissed.*