LAURA V. SCHNEIDER *v.* ADELINE HASSON.

[No. 60, October Term, 1931.]

*Decided January 13th, 1932.*

548

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Philip B. Perlman* and *Wirt A. Duvall, Jr.,* for the appellant.

*Helen Sherry,* for the appellee.

PARKE, J., delivered the opinion of the Court.

On April 3, 1928, Laura V. Batey obtained an absolute divorce from her husband, Fred Batey. The spouses had shortly before agreed, subject to the approval of the chancellor, with reference to alimony and the custody and support of their infant child, in the event of a divorce being decreed. This agreement between the father and mother provided that on their divorce the wife should not receive any alimony, and that the custody of the infant, Mildred V. Batey, should be awarded to Adeline Hasson, an unmarried aunt of the mother, with the right of the parents to see the child, at reasonable hours, as often as they might properly desire; and that the father assume the support of the child, whose custody should always be subject to the jurisdiction and further order of the Circuit Court No. 2 of Baltimore City. At the foot of this agreement was indorsed a declaration, over the signature of Adeline Hasson, that she would accept the custody of the infant, and would at all times perform the necessary duties with respect to the care, custody, support and education of the child. The agreement, with this indorsement, was filed in the cause, and the decree passed adjudged and ordered that this agreement be ratified and confirmed, subject to the further order of the court in so far as it affected the guardianship, custody, maintenance and support of the child.

The great aunt of the child received the child into her care and keep. The father moved to California, and did not contribute to the support and maintenance of the infant, and the custody of the great aunt was not attempted to be disturbed until September 20th, 1930, when the mother filed a petition that she be awarded the custody and care of her daughter, and be charged with her support and maintenance. The great

aunt resisted this petition, and the matter was set down and testimony was taken before the chancellor, who decreed that Adeline Hasson retain the custody of the infant, with the right of the mother to have her daughter with her from Friday afternoon until seven o'clock P. M. of Sunday evening, and to visit her, as provided in the original agreement, on other days of the week, and, further, that Adeline Hasson should pay for the care, support, and maintenance of the child so long as she should retain the custody of the infant. From this decree, the mother has appealed.

The petitioner's mother died when the petitioner was but seven years old, and Miss Hasson assumed the mother's place and duties, and reared the petitioner, who continued to live with her aunt until Miss Hasson went to California for a visit of nearly two years. During this separation, the petitioner married and the child was born. On the return of the aunt to Baltimore, the niece, child and husband, who was out of work, went to live in the home of the aunt, and, except for a short interval, this arrangement continued until January, 1928; the husband, however, having deserted his wife, and the wife working and paying the aunt eight dollars a week for board. These were the circumstances which had preceded the filing of the bill for divorce, and, since the decree, the petitioner, in February, 1929, married Ernst Schneider, and, in order to save the money with which to start housekeeping in their own house, Mrs. Schneider continued to work for more than a year after her second marriage. The young couple now own a comfortable home in the suburbs of Baltimore, and, since September, 1930, the mother, for the first time, has been able to give her daughter, now seven years of age, a suitable home in which the child will receive the constant care, discipline, and supervision of the mother. The parent requested the great aunt to restore the child to be reared, educated, and supported by the mother and stepfather, but the request was declined.

There is nothing shown on the record in the character, disposition, position, and financial responsibility of the mother and her husband, on the one hand, or of the aunt on the

other, that would justify the court in declining to award the custody of the infant to either one or the other. However, the agreement and decree contemplate a change in the custody of the child according to the discretion of the chancellor, and so authorize the exercise of this power whenever rendered advisable by the welfare of the infant. *Hill v. Hill,* 49 Md. 450, 458; *Carter v. Carter,* 156 Md. 500, 144 A. 490.

Miss Hasson is an admirable woman of impeccable character, good education, and moderate means. She taught in the public schools for many years, and now has charge of the headquarters of the Women's Christian Temperance Union of Maryland, at 903 St. Paul Street, Baltimore, where she lives with the child in two rooms and a bathroom on the second story, with the use of the kitchen on the first story, which is, also, the location of the meeting room and office of the Union. The child must play in the building or on the street, with its heavy traffic and travel. These conditions are a disadvantage in the rearing of such a young child, and suffer by comparison with the benefits of life in a suburban section, where the mother lives in a six-room cottage, with purer air, more sunlight, and room for play on the lot.

While Miss Hasson is a great aunt, and loves the child, and desires the solace of her company, by force of natural law she cannot take the place of a mother, nor love the child so fondly nor crave its society so strongly as a young mother does her only offspring. The enforced separation of the mother will deprive the child of that close and intimate association which is the most precious possession and enriching experience of childhood; and, by placing the child under the protection of a great aunt, who, in point of time, is further removed by a generation than the mother, will probably either deprive the child of the great aunt's guidance and protection at the most critical period of the great niece's life or then burden the child with premature responsibility. Unless there is some strong ground to the contrary, the natural association of mother and child should prevail and not be diverted to that of great aunt and great niece. *Gillett v. Bryant,* 203 Ill. App. 322.

The testimony has illustrated the evil of a divided control of a child. The chancellor, however, has provided by his decree that the child shall be in the custody of the mother two days in every week. This divides the week in two unequal parts, during each of which the child will be subject to a superior who has divergent views, because it is clear from the evidence that the mother and great aunt have different theories with reference to the conduct and upbringing of the child, which make for conflict and antagonism, and which will eventually be a disturbing factor in the training of the child, subversive of discipline, and provocative of a conflict in loyalty and affection of the child.

The divorce of the parents was not the fault of the petitioner on this record, and the surrender of the child to the custody of the great aunt was not because of a desire on the part of the mother to be relieved of her maternal duty, but was because she was compelled to earn her living, and she could not work and keep her infant. The necessity to give up her child did not lessen the mother's love for her child or cause her to lose interest in its welfare. As soon as she was able properly to care for the child, she sought to get her back. She and her present husband are of good character, and are suitable persons to have the charge of the child, and are able to provide for her in a manner conforming to the child's station in life. These and the other considerations that have been set forth in this opinion make it clear that the course most beneficial to the child's welfare and happiness is to restore the daughter to the care and custody of the mother, who is willing to assume, and so may be charged with, the maintenance and support of the child. *Barnard v. Godfrey,* 157 Md. 264, 271, 272, 145 A. 614. As this conclusion is not in accord with the decree from which the appeal is prayed, the cause will have to be remanded.

> *Decree reversed, and cause remanded for a decree to be passed in accordance with this opinion, and providing that the costs on this appeal be paid by the appellee and those below by the appellant.*