# CARROLL CONNELLY *v.* JOSEPHINE C. JONES

### ET AL.

[No. 74, October Term, 1933.]

*Decided January 12th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*C. Arthur Eby,* for the appellant.

*J. H. C. Legg,* submitting on brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The case is one on a petition for adoption of a child, resisted by the father, the mother being dead, and the father appeals from a decree for the adoption. There is very little dispute on the facts, the parties and witnesses on both sides having testified with apparently complete frankness. The dispute is on the effect of the facts, and the action they demand, on the petition.

The child is a girl, born April 6th, 1926, to Carroll Connelly and his wife, Ruth C. Connelly. The couple had one other child, a son, born February 19th, 1924. The father is an iron worker living in Baltimore City, and, according to his testimony, was employed by the Bartlett-Hayward Company there until laid off in a reduction of the force of employees for economic reasons in January, 1932. Since that time he has obtained only odd jobs, and has been dependent in part, for support of his son and himself, upon the Catholic charities. While he expresses a hope of procuring employment soon, he frankly says he is not able to maintain a home now.

In June of 1929, the mother of the child became ill, and in need of an operation, and was required to go to a hospital, and she then took the girl child to an aunt of her own, or grand aunt of the child, Mrs. Jones, the appellee, of Queen Anne's County. Mrs. Jones is a woman of fifty-one years, and her husband is sixty-three years old. She maintains a boarding house, with fifteen or twenty boarders, and her husband is an oysterman in season, and does odd jobs out of season. The testimony all agrees that the house is a good one for a child, and the child's father declares that the aunt's treatment of the child and of himself could not be better. The mother of the child never came back for it. After her operation, she required confinement for nervous trouble, and she died at the Spring Grove Hospital for the Insane on August 15th, 1932.

Since the child has been in the care of the grand aunt, its father has visited it only infrequently, staying from Saturday night until Sunday night when he did come. He explains that he could not often afford the expenses of the trip from Baltimore to Queen Anne's County. The testimony agrees that when the father was visiting he showed affection for his child, and the child showed affection for him. He has contributed only ten or fifteen dollars and some clothes to its maintenance; but here again, he testifies that his resources would permit no more. He expresses a wish to have the child now placed in a school.

If the question were one of care and custody of the child under the conditions testified to, a decision to continue it in the care and custody of the grand aunt might well find support in this evidence. To repeat, the father is not able to maintain a home of his own, and the child is well kept, in a home of affectionate relatives, and it may well be that any other arrangement now possible would not be equally conducive to the child's welfare. But the petition filed by the appellees goes far beyond the question of care and custody; it seeks a permanent severance of the legal relation of the parent and his child. For that extreme measure the facts show, in the opinion of this court, no justification. Whatever shortcomings the father may have, there is no such unworthiness suggested as would require or justify depriving him of his relation to his child. And the child, now too young to be consulted, has an interest to be protected. In all probability she will in the course of time grow to cherish the natural tie with her own father, and the severance of it now may prove no small grievance to her.

The statutory provisions for adoption of children (Code, art. 16, secs. 74 to 76), themselves contain no reference to the natural right of the parents, but it requires no argument to support the implication that the laws do not mean to deprive parents of their own children except under extraordinary conditions, such as do not exist in this case. *Alston v. Thomas,* 161 Md. 617, 620, 158 A. 24; *Kartman v. Kartman,* 163 Md. 19, 161 A. 269.

*Decree reversed, and petition dismissed, with costs.*

ADKINS, J., dissents.