# WILLIAM SPENCER ET AL. *v.* FRANCES ROWENA FRANKS

[No. 11, October Term, 1937.]

*Decided October 29th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Floyd J. Kintner,* for the appellants.

*Joseph H. Colvin,* with whom was *Irving H. Mezger* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Robert William Spencer is an infant, the third child of Frances Rowena Franks and Samuel Franks. The child was born on February 27th, 1930. Three months after his birth the parents separated and have never since lived together. Neither the mother nor the father has maintained a home, and the three children were left with their maternal grandmother. The mother and grandmother

found they were unable to support the three children, and in March, 1931, the infant in question was placed temporarily with relatives of the father until the half sister of the father, Anna Spencer, gave the infant shelter. After about four months, the Spencers returned the infant to its mother, who sent the child to his maternal grandmother. The action of the Spencers was prompted by the bad health of Mrs. Spencer, that followed an operation. The Spencers were childless and they had formed such an attachment for the child that they sought and obtained his return in September, 1931. The mother spent that Christmas with the Spencers and the boy, and, after she left to resume her work as a waitress in a restaurant in New York, she wrote: "I know how you feel about Bobby and he is yours always. Only wish I could make up my mind to sign those papers. Do you really want me to do it, and would it make you both happy? If it would, I will do it for you. But, Anna, I would never try and take Bobby from you. He is too happy with you and I could never make him that happy." The following year, however, the mother informed the Spencers that she wished to have the infant. Shortly afterward, on November 25th, 1932, William Spencer and Anna Spencer, his wife, began appropriate proceedings in equity for adoption. The father of the infant signed a formal assent to the adoption, and the mother was made a party defendant, answered and resisted the adoption. The matter of the adoption was controlled by the Code provisions, which were fully complied with, and, after a hearing, at which testimony was taken, a decree was entered. The chancellor adjudged, on May 24th, 1933, that the infant be declared the legally adopted child of William Spencer and Anna Spencer, his wife, and that the name of the infant be changed to Robert William Spencer. The decree concluded in this phrase: "With leave to parents to occasionally see the child."

The child has remained in the custody of his adoptive parents. The docket entries show that the mother, on October 28th, 1933, filed in this cause a petition for leave

to visit the infant on the last Saturday of every month from 10 a. m. to 1 o'clock p. m. It appears that this authorization was given. However, on February 1st, 1934, the natural mother filed another petition, which was answered by the adoptive parents, and later dismissed by the court. Again, on December 12th, 1934, the natural father filed a petition for permission to see his son on alternating Sundays at the home of the adoptive parents. Again an answer was had and, after hearing, the request was granted.

These petitions, hearings, and orders were had by reason of the provision incorporated in the original decree of adoption, and caused, on February 6th, 1936, a petition to be filed on the part of the adoptive parents in which they allege that the visits of the natural father and mother to the child for stated periods at the home of the adoptive parents, or, in the case of the natural mother, at one of the rooms of the juvenile court to which the child is taken, have prejudicially affected the nervous condition of the infant, and will, if continued, seriously impair his health. Upon these grounds, the petitioners prayed that the natural parents be required to show cause why the provision in the decree of adoption, which is found in the final additional words "With leave to parents to occasionally see the child" should not be altered or modified in accordance with the circumstances of this case.

The answer of the natural father to this petition was a denial of any harmful effect of the visits; and an assertion that the decree is final and enrolled and, so, not to be amended or changed. The answer of the natural mother denied any ill effect of her visits upon the child, and attacked the decree on the grounds that the hearing was unfair; that the consent of the natural father to the adoption was obtained by fraud, which had recently come to her knowledge; that material testimony was suppressed at the hearing on which the decree is based; and that the incomplete testimony given on the part of the adoptive parents was the result of "connivance" on the

part of certain witnesses to deprive the natural mother of the custody of her child. On the averments thus summarily stated, the court passed an order requiring the adoptive parents to show cause why the decree of May 24th, 1933, should not be rescinded and annulled. The answer to the charges of this pleading was a denial by the adoptive parents.

The next proceeding was on September 4th, 1936, when Frances Rowena Franks filed a petition as "the natural mother of the said infant, and in accordance with section 80, article 16 of the Annotated Code of Maryland, 1924," and asked for the custody of the infant from September 12th, 1936, to September 19th, 1936. The chancellor granted this request, and compelled the adoptive parents to deliver the child, at a given time and place, to the mother, who was required to remain in the City of Baltimore, and keep the child with her during the period named, and at its end to surrender the child to its adoptive parents at a room of the juvenile court.

Testimony was taken and the matters in issue submitted to the court, which passed on December 22nd, 1936, the order from which this appeal is taken. By this order the chancellor refused to modify the original decree with respect to the privilege granted the natural parents, and dismissed the petition of the adoptive parents which prayed this modification. In addition the natural mother was given the right to have the infant with her from 9 o'clock in the morning until 5 o'clock in the afternoon on the last Saturday of every month, subject to the further order of the court. Although the court did not in terms refuse the relief asked by the natural mother to annul and rescind the original decree, a refusal is implicit in its order, which depends upon the continued existence of the status created by the original decree. The averment of recently discovered fraud practiced upon the court in the passage of the decree was the only issue raised upon which a rescission might have been granted, but the testimony on that point is trivial and unconvincing and the chancellor rightly concluded the charge of

fraud wholly unfounded. *Backus v. Reynolds,* 159 Md. 601, 152 A. 109. The questions open on this appeal are (1) whether the addendum to the decree of the clause "With leave to parents to occasionally see the child" is void, and (2) whether the privilege allowed the natural mother to have the custody of the child on the last Saturday of every month is permissible under the circumstances.

1. The power of the court to consider the first question turns upon whether or not, in the absence of fraud, the parties plaintiff in a cause in equity, who have neither sought redress by appeal nor writ of error, may, when the times within which an appeal may be taken or a writ of error obtained have long since expired, dispute the validity of a part of a decree while conceding the validity of the rest. The answer depends upon the jurisdiction of the court. The inquiry, moreover, postulates jurisdiction, except as to the part assailed. The accepted doctrine is that, where a court has once acquired the requisite jurisdiction, it has a right to decide every question which is presented in the cause, and its judgment and decree, no matter how great the error, cannot be collaterally attacked. *Fridge v. State,* 3 G. & J. 103, 112-114. As a general rule, a decree is regarded as entire, but, if a part be separate and distinct from the whole, it may be considered independently. 34 *C. J.* sec. 812, p. 510; *Freeman on Judgments* (5th Ed.) sec. 324, pages 648, 649. If, therefore, such a divisible part be not within the power of the court to decree, it is a nullity and may be so treated and declared whenever its enforcement is sought or undertaken. *Supra; Barnes v. American Fertilizer Co.,* 144 Va. 692, 130 S. E. 902, 906.

The court must stay within the limit of its jurisdiction and powers. The correction of wrong decisions, when made within the scope of the court's authority, is on appeal or other form of direct review, but a wrong, or even a correct, decision, where the court has exceeded its jurisdiction and power, is void, and may be set aside either directly or collaterally. As expressed by *Freeman*

*on Judgments* (5th Ed.) sec. 354, pages 734-737: "Hence though the court may have acquired the right to act in the cause and been put in possession of full jurisdiction to go ahead and dispose of the issues involved, its judgment in excess of the jurisdiction thus acquired or which transcends the judicial powers which it may rightly exercise under the law of its organization is subject to collateral attack for want or excess of jurisdiction, even though the parties may have acquiesced or consented to the exercise of the jurisdiction which the court assumed to exercise, for no act or volition of the litigants can confer a power upon the court which the law does not authorize it to exercise." *Supra.*

The provision involved is separately incorporated in the decree and may be eliminated and treated as surplusage without affecting the validity of the decree, since the incidence of the provision is upon the operation of the decree of adoption, and concerns the manner in which the status adjudged shall be enjoyed by the adoptive parents. *Freeman on Judgments* (5th Ed) sec. 324, pages 648, 649. In other words, if the clause under consideration had not been inserted at the end of the decree, the status established by the decree thus modified would be exactly what is contemplated by the statute of adoption. *Bigelow v. Forrest,* 9 Wall, 339, 19 L. Ed. 696. It thus appears that the decree is divisible and the clause is not an inseparable concomitant of the decree. The court here is, therefore, free to consider the clause severally and to hold it invalid, if the chancellor was without jurisdiction to decree in terms of the clause.

The power to decree an adoption did not exist at common law, and is purely a creation of statute. *Hillers v. Taylor,* 108 Md. 148, 155, 156, 69 A. 715; *Zimmerman v. Thomas,* 152 Md. 263, 265, 136 A. 637. So, the measure of the chancellor's authority is the statute. The statute, however, confers jurisdiction with respect to the single subject matter of adoption, with a permitted change of the child's name, if the petition contains a prayer to that effect. The record shows that all the requirements of

the statute were satisfied for the passage of a decree declaring the minor child the adopted child of the petitioners, with a change of name. *Backus v. Reynolds,* 159 Md. 601, 152 A. 109. The statute authorized no other decree, and defined the effect to be given to such a decree. The words are explicit. "The effect of such decree of adoption shall be to entitle the child so adopted to the same rights of inheritance and distribution as to the petitioner's estate, and the same rights of protection, education and maintenance as if born to such petitioner in lawful wedlock, and the natural parents of such child shall be freed from all legal obligation towards it." Code, art. 16, sec. 76. Other sections of the statute assure to the adopted child certain rights of a natural child with reference to the adoptive parent. Code, art. 16, secs. 74-79. The effect of decisions, which have construed these or similar statutory provisions, is that the adopted child is endowed with the status of a natural child of the adoptive parent. An infant who has been adopted, as in the case at bar, by a husband and wife, becomes the child of both adopting parents. *Waller v. Ellis,* 169 Md. 15, 25, 179 A. 289; *Lee v. Wood,* 279 Mass. 293, 181 N. E. 229; 1 *American Jurisprudence, Adoption of Children,* secs. 51-53, pp. 650-653; 2 *C. J. S. Adoption of Children,* secs. 55, 56, 58, 59, pp. 446, 447, 450, 451.

Since the general effect of the decree of adoption under the statute was to terminate the legal relations between the child and its natural parents, the statute contemplated that the custody of the infant, which was an incident of the parental relation, would no longer be the right of the natural parents, but would be the exclusive right of the adoptive parents.

If the control and custody of the adoptive parent is not of the same nature and scope as that of a natural parent, the provision of the statute that the effect of the decree is to entitle the infant to "the same rights of protection, education and maintenance as if born to" the adoptive parent "in lawful wedlock, and the natural parents of such child shall be freed of all legal obligation

towards it," would be defeated. Consequently, as the decree of adoption had divested the natural parents of the right of custody and control of the infant, and had relieved them of all parental liability and responsibility with respect to the infant, the chancellor could not impose conditions in a decree of adoption which would assure to the natural parents rights which the decree extinguished by statutory mandate and whose continuance was inconsistent with the enjoyment by the adoptive parents of the status created by the terms of the statute. The statute clearly did not contemplate that an adoptive infant would be subject, whether occasionally or periodically, to the conflicting authority or custody of the natural and adoptive parents.

Furthermore, there was implicit in the clause in controversy a continuation of the court's jurisdiction with respect to the custody of the infant. It was not the intention of the statute that after the decree of adoption the court should be invested with continuous authority in the cause thenceforth to entertain therein applications made from time to time, by the natural parents, for a fresh order, for an interpretation of the original order, or its change or modification on proof of the altered circumstances of the natural or adoptive parents, and to grant any such application which may appear to be warranted by the evidence. The plain and express words of the statute indicate the intention of the Legislature that the original decree, if within the granted authority, was to be taken as final and binding. With the entry of the final decree of adoption and its enrollment, the chancellor has, for most purposes, exhausted the jurisdiction of the court. It was so held in *Waller v. Ellis*, 169 Md. 15, at page 25, 179 A. 289, 293, where Judge Offutt, speaking for the court, said: "The proceeding deals primarily with status, and only incidentally with custody. Once the issues involved in it are adjudicated, the jurisdiction of the court under the statute is at an end, and upon the passage of a decree of adoption the relation between the adopting petitioner and

the child is, so far as they are affected, that of parent and child, and the petitioner thenceforth has the same right to its custody and government that a natural parent would have."

Although the provisions of the final clause are beyond the power of the chancellor to decree and, so, void, the rest of the decree is not thereby made void, since the invalid clause is separable and divisible, and, when rejected, the decree is a valid exercise of jurisdiction. *Supra; Bernstein & Sons v. Hobelman, Trustee,* 70 Md. 29, 37, 38, 16 A. 374. See *Gebhart v. Merfeld,* 51 Md. 322, 326; *Mayhew v. Graham,* 4 Gill, 339.

2. While the statute of adoption is concerned with the creation of a new status, and, when adoption is decreed, the right to the custody of the child during infancy is incident to the new domestic relation, and continues during the child's minority to the same extent as if the custody were that of the natural parent, nevertheless the custody is subject to the same restrictions as those of natural parents. *In re Osborne,* 205 N. C. 716, 172 S. E. 491; *Martin v. Fisher,* 25 Ohio App. 372, 158 N. E. 287; *Mitchell v. Brown,* 18 Cal. App. 117, 122 P. 426; *In re Hunsicker's Estate,* 65 Cal. App. 114, 223 P. 411; *Jensen v. Sorenson,* 211 Iowa 354, 233 N. W. 717; *Gomez v. Hernandez* (Tex. Civ. App.) 29 S. W. (2nd) 843; *In re Johnson,* 87 Iowa, 130, 54 N. W. 69; *Waldoborough v. Friendship,* 87 Me. 211, 32 A. 880; *Washburn v. White,* 140 Mass. 568, 5 N. E. 813; *Dwyer v. Dwyer,* 286 Ill. App. 588, 4 N. E. (2nd) 124.

So, although the decree of adoption is in itself presumptive evidence that the custody of the adoptive parent best subserves the welfare of the child, nevertheless this presumption may be overcome by clear testimony; and, thus, the continuance of the custody incident to the decree of adoption is dependent upon the welfare of the child, and may be modified or changed by subsequent original proceedings. Code, art. 16, sec. 80; *Barnard v. Godfrey,* 157 Md. 264, 267. See Code, art. 42, secs. 19-21.

It appears from the record that the natural mother

filed a petition in this cause for temporary custody of the infant during a stated period. In this petition she relied on section 80 of article 16 of the Code. The petition should have been by way of an original proceeding, but the question of the procedure was not raised, and the chancellor took the testimony and determined the question of custody on the evidence given at the hearing.

The conduct, character, and competency of the foster parents are not questioned. The record affords no reason to believe that the adoptive parents are unfit to retain the custody of the infant or that they will be unable to fulfill every duty which they have undertaken. The testimony clearly shows that they are respectable and responsible and are properly discharging the parental obligations which they have assumed under conditions and material circumstances which make for the comfort and contentment of the child, and assure to him secular and religious training and education, with support and maintenance in accordance with the child's and their station in life. In every situation it is the court's duty to consult the welfare of the child rather than the affection of the natural mother. Sentimental emotions aroused by the display of maternal desire for the occasional companionship of the child must be subdued if their indulgence will be prejudicial to the welfare of the child. *Barnard v. Godfrey*, 157 Md. 264, 267, 145 A. 614.

In the problem at bar, the court may not disregard the effect of the decree of adoption. It deprived the natural parents of the then existing right to the custody of the child. The adoptive parents were substituted for the infant's natural parents, with all their rights, duties, and obligations. The custody thus arising is of a permanent nature, and is not to be affected by the enforcement of the provisions of section 80 of article 16, except in the best interest and for the welfare of the child. The foster parents have an intimate and superior knowledge of facts and conditions, which enable them to decide what course is most conducive to the welfare of the child in respect to his natural parent. A court will not interfere

with the exercise of this parental judgment in reference to this matter, except for grave abuse, and then only to promote the welfare of the child. The problem is generally best left for solution to the adoptive parents, since they are in actual and lawful possession of the child, and not only have the legal right to decide, but can also best determine, whether the obedience of the child and the reciprocal affection between them and the infant may be prejudicially affected, and the discipline, happiness, and welfare of the child endangered by the temporary custody of the natural parent. *See Schneider v. Hasson,* 161 Md. 547, 551, 157 A. 739.

In the absence from the record of clear and satisfactory proof that the welfare of the child requires the intervention of the court to compel the adoptive parents to surrender temporarily but regularly the custody of the child to the natural mother, the court is of the opinion that the privilege of seeing the child should have been left to the discretion and determination of the adoptive parents. *Alston v. Thomas,* 161 Md. 617, 620, 158 A. 24. See *Finlay v. Finlay,* 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 940.

The order passed in the pending cause on December 22nd, 1936, is not in agreement with the conclusions here expressed, and will be reversed for the reasons stated.

> *Order of December 22nd, 1936, reversed, with costs to appellants, and cause remanded for a decree in conformity with this opinion.*