## WILLIAM EARL WHITE, ET UX. *v.* ELIHU SEWARD ET AL.

[No. 163, October Term, 1945.]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Lewis C. Merryman* for the appellants.

Submitted on brief by *Herman E. Perdue* for the appellee, Elihu H. Seward, and by *W. Edgar Porter* for the appellee, Wicomico Welfare Board.

COLLINS, J., delivered the opinion of the Court.

Elihu.H. Seward and Catherine Hearn Seward are the father and mother of the following children: Elizabeth, born in 1939; David, born in 1940; Herbert, born in 1942, and George Samuel Seward, born February 11, 1944.

Sometime previous to September 9, 1944, the father, Elihu H. Seward, became a member of the armed forces of the United States. On September 9, 1944, all four children were placed in the custody and care of the Wicomico County Welfare Board by the Juvenile Court for Wicomico County. The father obtained a furlough, came home, and appeared in Court with his wife at the time of that commitment. At that time an understanding was reached that the mother would go with her husband near the camp where he was stationed. The Court committed the four children to the Wicomico County Welfare Board with the understanding that they would be placed in homes where they would receive proper care. At that time Mr. Seward was told that when he was discharged from the service of the United States and could re-establish his home in a manner satisfactory to the Court, the Court would consider returning the children to the parents. At that time George Samuel Seward was in poor health and confined to the hospital. All four children were placed in homes. The Welfare Board grants two types of licenses to foster parents; one where the child is for adpotion, and the other where adoption is not contemplated. The infant child, George Samuel Seward, was placed, subject to the rules and regulations of the Welfare Board, which were understood by William Earl White and Nellie Mary White, the appellants in this case, in their home. They were told at that time that this infant was not for adoption and that their home was not licensed as an adoption home. The father made an allotment from his Army pay to the Welfare Board and the Whites were paid monthly for their services to the infant, by the Welfare Board. In addition the Welfare Board provided clothing and medical care. The Whites were told at the time of commitment and during commitment that George was not placed in their home with any intention of adoption.

The father, after serving overseas, was discharged from the Army in October, 1945, and shortly afterwards obtained work in Wilmington, Delaware, where, at the

time of the hearing in this case, he was receiving a salary of $138 per month and a pension of $115 monthly. Although it appears, according to the testimony in this case, that differences had previously arisen between himself and his wife, they are now living together in a room in Wilmington, Delaware, and are making plans to re-establish their home there.

In spite of the fact that the appellants had always been informed that George Samuel Seward was not placed with them for adoption, they filed on November 29, 1945, in the Circuit Court for Wicomico County a petition for adoption of the said infant, George Samuel Seward, and that his name be changed to William Earl White, Jr. This petition was opposed by the parents. After a hearing before the Chancellor at which time the facts above recited were presented, together with other facts, the Chancellor dismissed the petition for adoption and change of name by decree passed on February 12, 1946. From that decree the appellants appeal.

It is not disputed that the infant has received excellent care in the home of the appellants and that his health has improved. Appellants have been paid for their services up until the time the petition for adoption was filed.

This is not a case merely for the custody of an infant whereby its temporary status is to be determined. By adoption its natural and legal ties with its father and mother are severed.

The only authority given the Chancellor and this Court to grant the relief asked for is by Code, Article 16, Section 78, which provides substantially as follows: "The several equity courts of this State, upon the application of any person residing in the city or county where such application is made, or the equity court in the city or county where a person to be adopted resides, shall have power to pass a decree declaring any person the adopted child of the petitioner, upon such reasonable notice to the parent or parents, guardian or guardians, of such child, if any there be, where a child is to be adopted, * * * by summons, order of publication or otherwise, as the court

may order to be given, provided that the court passing the decree shall become satisfied, upon careful investigation, in the case of a child, that the best interests and welfare of such child will be thereby promoted, and provided further, that the child, if of sufficient intelligence and capacity to give an understanding assent, * * * shall so desire * * *." *Spencer v. Franks,* 173 Md. 73, 195 A. 306, 114 A. L. R. 263.

In order for the adoption to be granted this Court must therefore be satisfied that the best interests and welfare of this infant will be promoted by the adoption and change of name requested.

This is not a case where a father and mother or either of them have willfully deserted and neglected their child. *Alston v. Thomas,* 161 Md. 617, 158 A. 24; *Lagumis v. ex parte Lagumis,* 186 Md. 97, 46 A. 2d 189. The father, during his separation from the infant, was in the armed services of his country, for the defense of the land in which this child was to live. Certainly according to all standards of that time, he was doing the utmost for the future of his infant. The mother on her own part initiated the proceedings of September 9, 1944, whereby the child was committed to the Wicomico County Welfare Board for proper care.

In the case of *Connelly v. Jones,* 165 Md. 544, 170 A. 174, the mother of an infant child became ill and was required to go to a hospital. The infant child was taken to its great aunt where it received excellent care. The mother subsequently died. The father visited the infant infrequently on account of the expense of the necessary trip to see the child. He made practically no contribution to its maintenance but whenever he saw the infant he displayed affection for it. Chief Judge Bond said in that case, 165 Md. at page 546, 170 A. at page 175: "But the petition filed by the appellees goes far beyond the question of care and custody; it seeks a permanent severance of the legal relation of the parent and his child. For that extreme measure the facts show, in the opinion of this court, no justification. Whatever shortcomings the father

may have, there is no such unworthiness suggested as would require or justify depriving him of his relation to his child. And the child, now too young to be consulted, has an interest to be protected. In all probability she will in the course of time grow to cherish the natural tie with her own father, and the severance of it now may prove no small grievance to her. The statutory provisions for adoption of children, Code Art. 16, Sections 74 to 76, themselves contain no reference to the natural right of the parents, but it requires no argument to support the implication that the laws do not mean to deprive parents of their own children except under extraordinary conditions such as do not exist in this case. *Alston v. Thomas,* 161 Md. 617, 620, 158 A. 34; *Kartman v. Kartman,* 163 Md. 19, 161 A. 269."

Likewise, in the instant case this Court is not convinced that the best interests and welfare of this infant will be promoted by permanently separating this child, too young to be consulted, from the natural love and affection of its parents, and by depriving him of the companionship of his brothers and sisters. In course of time this boy will no doubt grow to cherish these ties which nature in its wisdom has seen fit to create.

Although it is not disputed that the child now has an excellent home with the appellants, it has not been satisfactorily proven to this Court that the best interests and welfare of the infant will be promoted by the adoption. Until the Court is so convinced the adoption, here disputed, should not be granted.

The Chancellor had the parties before him for his observation and appraisement. The burden of proof was upon the appellants to show that the ties created by nature should by the Courts be severed. We see no reason to disagree with the finding of the Chancellor.

*Decree affirmed, with costs.*