## DOROTHY INA ATKINS v. JESSE EARL GOSE, ET AL.

[No. 63, October Term, 1947.]

*Decided January 15, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Marion E. West* for the appellant.

*J. Edwin Hutchinson* for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Dorothy Ina Atkins from a decree of the Circuit Court for Prince George's County ordering that her infant child, John Russell Atkins, born February 26, 1944, be the adopted child of Jesse Earl Gose and Dorothy Frances Gose, his wife, and that the name of the infant be changed to John Russell Gose.

The briefs and appendices in this case contain no testimony. We must, therefore, rely on the opinion of the Chancellor and certain letters from the Prince George's County Welfare Board and the briefs for the facts in this case.

The appellant married Andrew J. Atkins on June 17, 1938. She had been previously married and had three children by that marriage. These three children spent most of their time, particularly after the second marriage, with their paternal grandmother until she died a short time ago. At the time the decree in this case was signed these three children, one of whom is an epileptic, were living with their mother. After her second marriage Mrs. Atkins had three children; namely, Randall Atkins, Dorothy A. Atkins, and John R. Atkins, who is the subject of this case. The married life of the Atkins has been a rather stormy one. He eventually obtained employment in a civilian capacity in Hawaii where he remained for about two years. He sent his wife from his income a very liberal allowance for her support and that of her family. While her husband was in Hawaii, Mrs. Atkins lived part of the time in Washington, D. C., and part of the time at the home of her step-father in Prince George's County.

When the husband returned from Hawaii after two years, and endeavored to re-establish his home and resume co-habitation with his wife he found that she was then pregnant by another man. It appears that the child with which she was then pregnant was stillborn. Finding his wife pregnant, the parties separated on March 1, 1945. The husband filed suit for divorce charging his wife with adultery. The case was heard in open court. The wife was represented by counsel. The allegations of the husband were controverted, but there was no substantial evidence denying the charge. The husband was granted the divorce. The custody of the three children was given to the paternal grandmother, the court being convinced that the home maintained by the appellant at that time was not adequate for the upbringing of these

small children on account of physical accommodations and the capacity of the mother to care for the children. The paternal grandmother had an adequate home and was willing to raise the children and seemed interested in their welfare. This custody with the paternal grandmother was not satisfactory as apparently she took little interest in the children and did not make an adequate home for them. A change in the grandmother's situation made it necessary that she give up the children entirely.

Andrew J. Atkins, the husband of the appellant, has insisted all through these proceedings that the two younger children, Dorothy and John, are not his children. However, he has made no attempt to prove this contention. These two younger children, Dorothy and John, have according to the findings of the Chancellor "both suffered from being shunted from pillar to post and with having been subjected to a rather callous attitude on the part of the father and his people." The husband having learned that Lieutenant and Mrs. Gose, the appellees here, desired to adopt one or more children offered them Dorothy and John for adoption.

The appellees, on October 22, 1946, filed a petition for adoption of these two children which was opposed by the mother. She then filed a petition in the original divorce proceedings asking that the custody in the decree in that case be changed. Previous to the time the matters before the Chancellor were heard, Dorothy developed certain traits which caused the appellees to decide against her adoption. These traits appear to have been caused by her very hectic childhood and the insecurity under which she had lived since infancy. The appellees then amended their adoption petition on November 26, 1946, and asked for the adoption of the youngest child, John, alone.

On December 17, 1946, the Chancellor filed an order for change of custody of the three minor children of the appellant. It was apparent to the Chancellor at that time that the mother had sought to remedy her deficiencies and improve her living quarters and mode of life.

He felt, however, that the mother's home still "left much to be desired," and that the youngest child should be left with the appellees, and that further investigation should be made before the petition for adoption of John should be either granted or denied. Taking the custody from the paternal grandmother, he awarded the custody of the oldest child, Randall Atkins, to his father, Andrew J. Atkins, with the right of the mother to see that infant, provided that he be not removed from the Brierly Military Academy without the approval of the court. The care and custody of the second child, Dorothy, whose face is paralyzed on one side, was awarded to her mother, the appellant here, subject, however, to the supervision and direction of the Prince George's County Welfare Board. Andrew J. Atkins was ordered to pay $5 per week for the support of Dorothy. The custody of the youngest child, John, was awarded to the Prince George's County Welfare Board provided, however, that he not be removed from the home of the appellees here without approval of the court.

Lieutenant Gose has risen from the ranks in the Navy to be a full lieutenant and is a very substantial man, with adequate earning capacity and the assurance of the security given an officer in the Navy. His wife maintains an immaculate home, appears to be a very fine person, and both the appellees are devoted to John. They have no children of their own and are very anxious to adopt John. The appellant, although contesting the adoption, admits that if the child is to be taken from her the appellees are the best people to have him. The Prince George's County Welfare Board, although opposing the adoption on the ground that no adoption should be granted where the parents are living and oppose such adoption, find that the appellees are adequate foster parents for John. They also find that he had responded admirably to the love and care of the appellees and that the relationship between the child and the appellees leaves nothing to be desired. Since the adoption was decreed by the Chan-

cellor the appellees with the child have moved to the State of California where they now reside.

At the time the decree in this case was signed the appellant had moved to a government housing project in Washington, D. C., where she has a two bedroom apartment for which she pays $27 per month rent. She is employed in the American Red Cross in Washington at a monthly salary of $189 where she has been employed for several years. She is well regarded by her employers and is regarded as "industrious, conscientious, willing, cheerful and calm." She wants all of her children with her. Her living arrangements are crowded. There is a couch or a bed in every room except the kitchen. The apartment is clean and tastefully decorated. At the time of decree seven persons were living there: the appellant, the three children by her former marriage, Dorothy, a niece of the appellant and her child. She says that in the near future the niece and her child will leave and she has expectations of procuring a somewhat larger apartment. The Welfare Board reports that her care of Dorothy has been excellent and the Chancellor was impressed with the appearance of her older children. These older children, however, were reared except for the past two years by the mother of the appellant. The Chancellor found that the appellant since the divorce case had done much to stabilize her life and to give more adequate care to her children. She vigorously opposed the adoption of John and wants his custody. Of course the financial and material considerations are not the paramount considerations.

Adoption cases always give the courts much concern as the decision must materially affect the future of the child before it. The Chancellor gave this case great consideration. The decree from which the appeal was taken was not passed until May 13, 1947, almost six months after the amended petition for adoption was filed. After long consideration he found that the child should have a united home in which he could have the love and care of both parents; that while Mr. Atkins'

conduct left much to be desired he provided adequate financial help for the family. The home was broken up by the appellant's conduct. It was the mother who denied the boy his normal heritage. He further found that custody should not be denied as a punishment for wrong-doing in the past, but the conduct in the past must be considered in determining the future. With the findings of the Chancellor we agree.

The power to decree an adoption is purely statutory and does not exist at common law. *Spencer v. Franks,* 173 Md. 73, 81, 195 A. 306, 114 A. L. R. 263. The decree in this case was passed May 13, 1947. We have not overlooked Chapter 599 of the Acts of 1947 and Chapter 19 of the Acts of the Special Session of 1947, but these Acts do not affect our decision in this case. The authority given the Chancellor and this court to grant the relief prayed here is by Code Art. 16, Sec. 78, which provides substantially as follows: "The several equity courts of this State, upon the application of any person residing in the city or county where such application is made, or the equity court in the city or county where a person to be adopted resides, shall have power to pass a decree declaring any person the adopted child of the petitioner, upon such reasonable notice to the parent or parents, guardian or guardians, of such child, if any there be, where a child is to be adopted, * * * by summons, order of publication or otherwise, as the court may order to be given, provided that the court passing the decree shall become satisfied, upon careful investigation, in the case of a child, that the best interests and welfare of such child will be thereby promoted, and provided further, that the child, if of sufficient intelligence and capacity to give an understanding assent * * * shall so desire * * *." *Spencer v. Franks,* 173 Md. 73, 195 A. 306, 114 A. L. R. 263; *White v. Seward,* 187 Md. 43, 48 A. 2d 335, 337.

The child being approximately three years of age at time the decree was signed was, of course, not of sufficient intelligence and capacity to give an understanding

assent to the adoption. In order, therefore, for the adoption to be decreed we must be convinced that the best interest and welfare of this infant will be promoted by the adoption and change of name requested. *White v. Seward, supra.* Each case must be decided on its own peculiar facts. In the cases of *Spencer v. Franks, supra,* and *Backus v. Reynolds,* 159 Md. 601, 152 A. 109, the question before the court was a change in the adoption decree which is not before us here. In the case of *Alston v. Thomas,* 161 Md. 617, 158 A. 24, the court found that the father who contested the adoption had wilfully abandoned and neglected the child after its mother's death. In the case of *Adoption of Lagumis,* 186 Md. 97, 46 A. 2d 189, the court found that the father had deserted and neglected the child and the adoption was awarded to the mother and her second husband.

In the case of *Connelly v. Jones,* 165 Md. 544, 170 A. 174, the mother of the child to be adopted became ill and was sent to a hospital. The great-aunt of the child took the infant and gave it excellent care. The mother subsequently died. The child lived with its great-aunt. The father visited the infant infrequently on account of the expense of the trip to see the child. He displayed affection for it but made practically no contribution to its maintenance. The great-aunt, Mrs. Jones, endeavored to adopt the infant which the father, Carroll Connelly, contested. Chief Judge Bond said in that case, 165 Md. at page 546, 170 A. at page 175:

"But the petition filed by the appellees goes far beyond the question of care and custody; it seeks a permanent severance of the legal relation of the parent and his child. For that extreme measure the facts show, in the opinion of this court, no justification. Whatever shortcomings the father may have, there is no such unworthiness suggested as would require or justify depriving him of his relation to his child. And the child, now too young to be consulted, has an interest to be protected. In all probability she will in the course of time grow to cherish the natural tie with her own father,

and the severance of it now may prove no small grievance to her. The statutory provisions for adoption of children, Code, art. 16, secs. 74 to 76, themselves contain no reference to the natural right of the parents, but it requires no argument to support the implication that the laws do not mean to deprive parents of their own children except under extraordinary conditions, such as do not exist in this case. *Alston v. Thomas,* 161 Md. 617, 620, 158 A. 24; *Kartman v. Kartman,* 163 Md. 19, 161 A. 269."

In a very recent case of *White v. Seward, supra,* decided July 23, 1946, the infant sought to be adopted, had a father, mother, and three brothers and sisters. Although differences had arisen between the father and mother, at the time of the decree they were living together and making plans to re-establish their home. The Whites with whom the child had been placed for custody gave it excellent care and sought to adopt the infant. The adoption was contested by the father and mother, and adoption was denied by the Chancellor. This court in affirming the Chancellor observed that he had all the parties before him for his observation and appraisement, and the burden of proof was upon the appellants to show that the best interests of the child would be promoted by severing its natural ties to its father, mother, sister and brothers, and that this burden had not been met.

In the case at bar it is admitted by all parties that the appellees are ideal foster parents and that the infant has responded to the love and care which he is receiving. The relationship between the child and the prospective adopted parents leaves nothing to be desired. A happy future with the adopted parents seems to be assured. Therefore, the pertinent question before us in this case is whether the ties to its natural family should be severed.

There is no father to consider in this case. If the child is returned to its mother it will have no association with its father who denies its paternity and desires the appellees to be the adopted parents. He will not have the

association with his older brother whose custody is awarded to the father. He probably will have the association of his sister, Dorothy, who although much improved, is not a well child. He will have the association of his three step-brothers and sisters, one of whom is an epileptic. He will, during the period when his mother is not employed, have her association and care. In spite of the fact that the appellant has done much to stabilize her life and to assume better care of her children we find her in crowded living quarters and employed most of the day. Although she should not be punished for her former indiscretions yet we must to a certain extent judge her future by her past. The three children by the former marriage who would be associated with the infant probably know that the alleged father denies the paternity of this child. These children in a thoughtless and childlike way would no doubt so inform the infant, John, and remind him of this on various occasions.

The Chancellor in this case had all the parties before him: the appellees, the appellant, the three children by her first marriage, and the brother and sister of the infant here. He held the case under advisement for a period of five months after the testimony was taken in open court. We do not feel that we should remove this infant from the highly satisfactory surroundings in which he now is, deprive him of the love and care which he is now receiving, and an honorable name. To do so would place him in the unstable environment of his mother, to satisfy her commendable and natural maternal affection for the infant whose custody she has had for only about one year since its birth. This would mean another removal of this very young child from "pillar to post". It would hardly be to John's best interests to do so. He would be compelled to claim a name which the natural donor of that name, the alleged father, denies is one to which he is entitled. The infant's future as John Russell Gose appears bright. His future as John Russell Atkins with the mother, invalid sister, and three step-brothers and sisters appears, to say the

least, highly problematical. We do not feel that the careful consideration of the Chancellor in this case, who had all of the parties before him, should be reversed. The decree will be affirmed.

*Decree affirmed, with costs.*