## TRUDEAU *v.* TRUDEAU

[No. 98, October Term, 1953.]

*Decided March 22, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John Wagaman*, with whom were *Wagaman & Wagaman*, and *William F. MacQueen* on the brief, for appellant.

*J. Louis Boublitz* and *D. K. McLaughlin*, for appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from an order continuing custody of young children in their mother in the face of allegations by the father that she is an unfit person.

Dr. John Trudeau, the appellant, was granted a divorce from his wife, Camilla Trudeau, the appellee, in Alpena, Michigan, in February, 1951 on grounds of extreme cruelty. The couple were married in 1946 and have two children, a girl and a boy, now eight and seven, respectively. The Michigan Court, finding that the charge of habitual and excessive drinking had not been proven against the mother, awarded her the custody of the children over the objection of the father. He was given custody for one month a year, in the summer, and the right to visit at all reasonable times and places, and ordered to pay $250.00 a month for the support of the wife and children. Mrs. Trudeau was authorized by the divorce decree to take the children out of Michigan, and in 1952, moved to Hagerstown, where her mother and sister and brothers live. In June, 1950, the same month he left his wife and children, Dr. Trudeau employed a new secretary and office nurse. In 1951, one day after she had obtained her Nevada divorce, he married her. They have two children, one having been born since

the hearing below. In March, 1953, Dr. Trudeau filed a bill of complaint in the Circuit Court for Washington County, alleging that Camilla Trudeau was a totally unfit person to have the care and control of the children, because she had on frequent occasions, during the occupancy of her apartment in Hagerstown from February, 1952 to the filing of the bill, entertained men—some temporarily, others over-night, and still others, for extended periods, and has on numerous occasions through the entire period become highly intoxicated, so that she has become and is a habitual drinker. It is also alleged that Mrs. Trudeau fails: ". . . (1) to exercise proper motherly or family discipline and control over said infant children, (2) to train them in satisfactory domestic conduct and (3) to practice and guide them in the proper principles of morality and good behavior" and ". . . has permitted said infant children to be without proper parental care, custody and kind treatment; . . ." It is alleged that Dr. Trudeau and his present wife: ". . . are persons of suitable character and now have the domestic and financial facilities for the proper care, custody and upbringing of said infant children in surroundings and circumstances which will be conducive to their development and growth into proper moral citizens, and strongly desire to have the care, custody and control of said infants."

The case was heard in April, 1953. The Chancellor took the rather extensive testimony under advisement until the following August, when he decided that the best interests of the children would be served by allowing them to remain with the mother, subject to the terms and conditions set forth in the decree of the Michigan Court. He retained jurisdiction of the case so that the question of custody may be reopened at any time.

The principles which control the determination of custody cases are well established.

The mother and the father are joint, natural guardians of their minor children and neither parent has an inherent

right to custody superior to that of the other. *Miller v. Miller*, 191 Md. 396. If necessary, custody may be given to more remote members of the family, or indeed, to those outside of the family. The mother is preferred where the children are of tender years. *Cullotta v. Cullotta*, 193 Md. 374; *Brault v. Brault*, 189 Md. 175. Despite this, the award of custody will not be made merely to gratify a natural maternal affection. *Atkins v. Gose*, 189 Md. 542. If the mother has been guilty of adultery, the custody will be generally given to another. *Pekar v. Pekar*, 188 Md. 360; *Stimis v. Stimis*, 186 Md. 489; and *Pangle v. Pangle*, 134 Md. 166. This rule, however, is not invariable. *Swoyer v. Swoyer*, 157 Md. 18; and *Atkins v. Gose, supra*. The over-riding consideration is the best interest and welfare of the children. The cases have described the search for this result as the main, the chief, the paramount, and the sole concern of the court in every case. *Miller v. Miller, supra*, at page 407 of 191 Md.; *Cullotta v. Cullotta, supra*, at page 384 of 193 Md.; *Chillemi v. Chillemi*, 197 Md. 257, 262; and *In Re Harris*, 200 Md. 300, 310. Thus, whatever paths of the maze are followed, the destination is always the child's welfare and prospects. Even as no will has a twin, no custody matter is the image of another and in none can the proper paths be plotted automatically on a map of the principles laid down by the cases. This is why the opinions of this Court reiterate, as particularly applicable, the rule that the opportunity of the Chancellor to see and hear the witnesses must be accorded the greatest respect. It was set forth in *Cullotta v. Cullotta, supra*, in these words: "This case is another of those in which the atmosphere of the trial, the appearance and demeanor of the witnesses is invaluable in reaching a correct and just conclusion. If the record in this case left us in doubt, we should not disturb his findings." In many cases, this Court has said it will bow to the trial finding unless compelling reasons require otherwise. *In Re Harris, supra; Collins v. Collins*, 184 Md. 655; and *Atkins v. Gose, supra*.

In the case before us, the allegations of the bill that the mother failed to exercise discipline or control over the children and permitted them to be without proper parental care and home treatment, not only were not proven but were either admitted, or shown, to be entirely untrue. It is now conceded that Mrs. Trudeau loves the children dearly and they fully reciprocate. The children are neat, well dressed, healthy, normal, and well cared for. They attend a Catholic school because their father is Catholic, although the mother is not.

The father not only did not avail himself of his right to custody in the summer, and of visitation, from February, 1951 to March, 1953, but never wrote to the children or sent them presents or greetings. He refused to talk to them when they called him by long distance telephone. He was almost, if not, a stranger to them and, of course, his wife is a complete stranger. Despite the present Mrs. Trudeau's statement that she was willing and able to care for the children, the Chancellor seemingly found an inner reluctance and feeling of doubt on her part, which he felt was justified, although the physical environment and material resources described by the father in Michigan, seem fully adequate.

The children's grandmother and uncles and aunts live in Hagerstown and there is the normal visiting back and forth, and the companionship of cousins of the same age. Credible witnesses, members of the family and others, testified that they frequently visited Mrs. Trudeau's apartment at unexpected times and reported finding the usual household and normal children.

The challenged conduct of the wife was shown to have lasted for only a relatively short period of time, that is, from February to December, 1952. Alcohol was the inducing cause. Mrs. Trudeau ceased drinking before Christmas, 1952 and has not drunk since. She has moved to a better neighborhood and apartment and has ceased association with men, for which she can be justly criticized.

The decision in the case then would seem to turn upon whether proof of the alleged habits and conduct for eleven months would be enough to cause her to lose custody of her children. If the testimony of the main witness for the appellant, the woman in the next apartment and former bosom friend of Mrs. Trudeau, but now, very antagonistic, was to be believed fully, the Chancellor's decision would perhaps be difficult to justify. Much of the testimony for the appellant was hers and more of it was inspired by her. On the other hand, many of the accusations made against the appellee were either explained as looking much worse than they actually were, or were denied entirely, and evidently, the Chancellor did not fully accept the appellant's view of the appellee's conduct. There was enough to show that the appellee at times drank to excess and then, certainly ostensibly, and in all probability, actually, conducted herself in a manner which cannot be condoned. However, it was not shown, save in one instance, which was immediately corrected by Mrs. Trudeau, that anything wrong that she did was in the immediate presence of the children or directly affected them.

The Chancellor, after saying that it would serve no useful purpose to review Mrs. Trudeau's conduct at length, made the following findings which we think are justified: "Suffice it to say that prior to the time of the filing of these proceedings, she was using alcoholic beverages too freely and this, no doubt, led to her association with men under circumstances which might be said to be far from satisfactory. While a divorced person does not have to occupy a vacuum insofar as the opposite sex is concerned, this does not mean that she can with impunity violate all of the rules of proper social conduct. And her conduct undoubtedly warrants a reprimand.

"If the conduct of the respondent should continue in the future as in the past and the children should be of an age to appreciate the significance of the conduct of the mother, then the custody undoubtedly should be

awarded to the father." The court then spoke of the cases such as *Pekar v. Pekar, supra,* in which the custody had been awarded the father and then said that this was: ". . . based upon adultery on the part of the mother and her continued association and cohabitation with her paramour. That is not the situation here. In fact, there might be a legitimate inference that 'the shoe is on the other foot'.

"The conduct of Camilla Trudeau, while reprehensible, falls far short of that of the female spouses in the cases above referred to, where they were living in open adultery, for all the world to see, with the person who wrecked the former marital relationship." In addition to the inference as to Dr. Trudeau, noted by the Chancellor, there is testimony in the record that would justify finding that the breaking point of his moral stability was at least as low as that he claims of his former wife. If it be assumed that her conduct is no better than that condemned in the adultery cases, nevertheless, as pointed out in *Swoyer v. Swoyer, supra,* at page 32 of 157 Md., the right of the Chancellor to change the general rule if circumstances warrant and award the custody of infant children to an adulterous spouse is recognized. The right also was recognized in *Pangle v. Pangle, supra.*

The opinion of the Chancellor reveals that his decision to keep the children with the mother depended on his finding that she had changed her way of life. He held the case under advisement from the hearing in April, 1953 until August of that year, undoubtedly so that there would be time to judge the permanence of Mrs. Trudeau's reform and her sincerity in making it last. There have been decisions in this Court which indicate that changed conditions, under the particular facts, may justify the over-looking of past indiscretions. In *Atkins v. Gose, supra,* the mother of a three year old infant had been guilty of adultery. Although it awarded custody to others, the Court agreed with the Chancellor that custody should not be denied as punishment for wrong-doing in the past, and said: "Although she should

not be punished for her former indiscretions yet we must to a certain extent judge her future by her past." In *Pekar v. Pekar, supra,* the Court said, in speaking of the situation where the wife continued to live in the home of her paramour: "But certainly, upon the facts shown, this boy should not be permitted to live with his mother *while she is living as she is now.*" (Emphasis supplied).

The Chancellor gave full consideration to the wrongdoing in the past in deciding whether it would continue in the future, and held that an opportunity should be given to Mrs. Trudeau to show that it would not, since, if it did not, the best interests and welfare of the children would undoubtedly be served by keeping them with her. The Court retained jurisdiction of the case so that if the mother's way of life should again become undesirable, custody could be given to the father, if that then seemed best, or to someone else. Periodic investigations for the benefit of the Court could be made by whatever agency serves in such capacity. This solution by the Chancellor has three advantages for the children. It serves to keep them in a presently proper environment, they need not be sent out of State to live with strangers who have shown no interest in them or affection for them, and it retains control by the Court to meet changes in conditions, if any occur. We cannot say that there is any compelling reason which makes this not in the best interests and welfare of the children under all the circumstances of this case.

*Order affirmed, with costs.*