## WINTER *v.* DIRECTOR OF THE DEPARTMENT OF PUBLIC WELFARE OF BALTIMORE CITY

[No. 297, September Term, 1957.]

*Decided June 19, 1958.*

Submitted on briefs to BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert Winter,* in proper person, on brief for himself as appellant.

*Thomas N. Biddison, City Solicitor of Baltimore, Hugo A. Ricciuti, Deputy City Solicitor,* and *Blanche G. Wahl, Assistant City Solicitor,* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The only question involved in this appeal is whether Section 72 of Article 16 of the Code (1957) violates the provisions of the federal constitution. It reads, in part, as follows:

> "A petition for adoption, as hereinafter described, may be preceded by a petition for guardianship with the right to consent to adoption, and such guardianship decree, which the courts having jurisdiction of adoption matters may require and shall have power

> to grant after such hearing and investigation as the court may deem appropriate, shall terminate natural parental rights, provided that due notice of the proceedings shall have been given immediately upon the filing of the petition by summons, order of publication, or otherwise, as the court may order to be given to the natural parent or parents, * * *"

It must be considered in conjunction with the other sections relating to adoptions, and, especially, with that part of section 74 which provides that the court may grant a petition for adoption *without* parental consent "if, after a hearing the court finds that such consent or consents are withheld *contrary to the best interests of the child."* (Italics added.)

The appellant is the father of a boy, who is now about fifteen years of age. When the child was a few months old, his mother died, after having placed him in the Henry Watson Children's Aid Society (Society). When still very young, he was committed to the care of the Department of Welfare by the Circuit Court of Baltimore City. Since the age of fourteen months, he has remained in the same foster home under the supervision of the Society, and these foster parents are the prospective adopting parents. A petition for guardianship under the provisions of section 72 was filed by the appellee and the appellant refused to consent to the granting of the relief prayed. The court, over the objection of the appellant, signed a decree granting the guardianship of the son with the right to consent to adoption unto the Director of the Department of Welfare.

While the appellant raises no questions concerning the best interests and the present and future welfare of the boy, it may be well to note the relationship between the father and the son in the past. The father has had no direct contact with the son since his birth. The father was sentenced to a penal institution in 1943 for a period of twenty years. He was paroled in 1951, but was returned to prison within a year for violating his parole. He was again paroled in 1954, and he again violated his parole. Finally, in 1955, he was sentenced to nine years' confinement in the Maryland Penitentiary.

The record does not disclose that the father has ever contributed to the support of the son.

While the right of adoption was known to the ancients of Greece and Rome and many other nations, it was unknown to the common law of England, and exists in this country in those jurisdictions having that law as the basis of their jurisprudence, only as the result of statutes. 1 *Am. Jur. Adoption of Children,* sec. 3; *Hillers v. Taylor,* 108 Md. 148; *Spencer v. Franks,* 173 Md. 73. Maryland passed its first adoption statute many years ago, but this case seems to be the first time that the constitutionality of such legislation has been directly attacked. The appellant claims: (1) that the statute under consideration abridges the privileges and immunities guaranteed to him as a citizen of the United States under the fourteenth amendment of the federal constitution; and (2) that it is violative of the first amendment thereof, which states that congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof.

I

Adoption statutes that violate no specific constitutional requirements or restrictions have been uniformly held to be valid. 2 *C. J. S. Adoption of Children,* sec. 5; 1 *Am. Jur. Adoption of Children,* sec. 4; *Cabrillos v. Angel,* 278 F. 174 (*C. C. A.* 9th); *Purinton v. Jamrock,* 80 N. E. 802, 805 (Mass.); *Nugent v. Powell,* 33 P. 23, 30 (Wyo.); and see many cases collected in 1 *Sixth Decennial Digest, Adoption,* key number 2. The power of state legislatures to provide, within constitutional limitations, for the adoption of children is no longer open to doubt. The question here involved is whether the statutory provision is invalid because it dispenses with the necessity of the father's consent. The provision of the fourteenth amendment that prohibits the making or enforcing of any law by a state which abridges the privileges or immunities of a citizen of the United States was not designed to interfere with the proper exercise of the police powers of the several states. (1 *Cooley, Constitutional Limitations* (8th Ed.), p. 46, n. 4.) The state as *parens patriae* and the protector of its inhabitants has, under proper circumstances, the power to change the status of a minor without

the consent of the parent. While the natural rights of parents should be carefully guarded, the welfare and best interests of the child are the primary considerations in all adoption proceedings. The validity of legislation permitting an adoption without the parents' consent is based upon the fact that a parent has no inherent right of property in a child, and the right that a parent has to the custody and rearing of his children is not an absolute one, but one that may be forfeited by abandonment, unfitness of the parent, or where some exceptional circumstances render the parents' custody of the child detrimental to the best interests of the child. 1 *Am. Jur. Adoption of Children,* sec. 41; *Purinton v. Jamrock, supra;* cf. *Ross v. Pick,* 199 Md. 341, 348, 351; *Burns v. Bines,* 189 Md. 157; *Townsend v. Townsend,* 205 Md. 591, 597; *Dietrich v. Anderson,* 185 Md. 103, 120. The rule is succinctly stated in 1 *Am. Jur. Adoption of Children,* sec. 4, thus:

> "In order to be constitutional, however, adoption statutes must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents or that it is manifestly to the interest of the child that it be taken from their custody by some judicial proceeding of which they had notice."

It may be noted that while section 72 contemplates a future adoption, it provides only for an authorization to the guardian to consent to such an adoption. This is forward looking social legislation that provides for the future welfare of children, and, in some situations, is extremely important. Under certain circumstances, it becomes of vital importance to a child's life that a parent be unacquainted with the identity of the one who adopts his child. Especially is this so when the parent has demonstrated his complete unfitness, or lack of desire, to care for the child. If such a parent does not know the adopting parents of his child, it may eliminate many possible disturbances of the child's future welfare, which,

otherwise, conceivably could be disastrous. Delaware (Title 13 Del. Code, secs. 1103-1110), Wisconsin (Wisconsin Statutes N. W. 48.40-48.43) and perhaps other states have enacted similar statutes, and such legislation is strongly recommended by the Children's Bureau of the Social Security Administration of the Federal Security Agency. See its publication No. 331, *Essentials of Adoption Law and Procedure*, (1949) p. 7. We have no hesitancy in holding that said section 72 of Article 16 (Code 1957) does not abridge any privileges or immunities guaranteed under the fourteenth amendment to the federal constitution.

## II

The appellant, who presented his brief in proper person, tries to make an unintelligible contention that the statute under consideration violates the first amendment of the federal constitution in regard to his religious freedom (he makes no reference to the state constitution). We are at a loss to discover where any question of religious liberty is involved in this case, unless the appellant contends that any law providing for, or looking towards, adoption is contrary to his religious views and hence impairs his freedom of religion. We are unable to accept this view. We note that he does not attack or even mention the religious preference provision of our adoption law, so that is not now before us.

*Decree affirmed, with costs.*