## WALKER *v.* GARDNER

[No. 108, September Term, 1959.]

*Decided January 19, 1960.*

Submitted to BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *William A. Linthicum, Jr.,* for the appellant.

Submitted on brief by *Paul Q. Cuddy* and *Jackson Brodsky* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Donald Gardner sought, and was granted, the adoption of

eight year old Michilene Walker, the daughter of his wife, over the objection of the child's father, Ralph W. Walker, II, who tells us the chancellor erred (a) in failing to find specifically that his consent to the adoption had been withheld contrary to the best interests of the child; and (b) in finding that the interests of the child best would be served by granting the adoption.

Walker has never seen his daughter. He and her mother married in October, 1949, and separated in May or June, 1950. The evidence was that during the brief marriage there were many separations because Walker subjected his wife to constant mental and physical abuse, even knocking her down and kicking her. One night in the spring of 1950, while Mrs. Walker was living with her mother, Walker sent two of their mutual friends to intercede with her to return to him. Mrs. Walker and one of the men went out to bring back something to eat. As they started out in the car, Walker "bobbed up out of the back seat" and started beating his wife with his fists. He took his wife to his apartment and chained her to a bed. She was rescued later by one of the two friends who threatened to call the police if Walker did not let her go.

In December, 1950, Walker got an Arkansas divorce. There was testimony that he had been told that his wife was pregnant but he made no mention or provision for the support of a child in the divorce proceedings. Mrs. Walker remarried in 1951 and that marriage ended six years later in divorce. In 1957 she married Donald Gardner, the appellee. They have a daughter who was three months old at the time of the hearing. The couple, their child and Michilene live in a duplex apartment in a good neighborhood near Washington. Gardner is described as a clean-cut, wholesome young man, who is religious, reserved, intelligent and studious, and of pleasing personality. He is a college graduate, who served three years in the Air Force, and now works for the Navy as a management analyst. The chancellor found from the testimony and demeanor of the couple, the testimony of a friend who knew the home, and the investigation report that after two unfortunate marital experiences, Mrs. Gardner had found a happy and harmonious marriage that would endure, saying

that if this were not so, adoption would not even be considered as being in the child's best interest.

The report found Gardner to be devoted to his wife and very fond of Michilene. Walker was convicted of several crimes when a young man. He has undergone psychiatric treatment. There was testimony that he performed an abortion on a girl with whom he was alleged to have had relations while he was married to Michilene's mother. He has been married four times and has six children, three by his present wife, "a fine woman * * * who holds a master's degree," who is considerably older than he, and one by each of the other three wives.

Over Walker's objections, Judge Lawlor had granted a petition for the adoption of another of his children some months before the present proceedings. The investigation report appraised Walker as evasive, cunning, emotional and unstable. The chancellor found him to be entirely selfish, one who thought only of himself and not at all of Michilene or her welfare and best interest.

Walker testified he had written many letters and made many calls in an effort to see Michilene, although he could specify only three letters, one in 1951 and two in late 1958. In the latter two he says he enclosed checks for twenty-five dollars, although one was post dated one year. He has never contributed in fact to Michilene's support.

The mother says that after a card and a box sent to Michilene by Walker on her first birthday, nothing was heard from him until 1958, when he sent two letters and two cards, a birthday card and an Easter card. She and her husband decided the best thing for the child would be to return the letters and withhold the cards from the child.

The chancellor found that, as in the earlier adoption case, Walker had made only perfunctory efforts to communicate with his child and "made attempts in that case also to send certain moneys that amounted to practically nothing, as far as the Court is concerned, as you have in this case, the only evidence being your Exhibits 3 and 4, one of which could not have been cashed."

We think rejection of both of Walker's primary conten-

tions is compelled by the record. Although Judge Lawlor did not say in so many words that Walker's consent was withheld contrary to the best interests of Michilene, that she did so determine plainly is implicit in what she said in her opinion, and we find the prerequisites of Code (1957), Art. 16, Sec. 74, to adoption without parental consent to have been gratified. Indeed, the finding expressly made, that the adoption would be for the child's best interests, (which we think was warranted) almost necessarily is a finding in itself that the withholding of consent was legally unjustified under Sec. 74.

As in custody cases, "the welfare and best interests of the child are the primary considerations in all adoption proceedings." *Winter v. Director,* 217 Md. 391, 396; *King v. Shandrowski,* 218 Md. 38, 42-43. Unlike awards of custody, however, adoption decrees cut the child off from the natural parent, who is made a legal stranger to his offspring. The consequences of this drastic and permanent severing of the strongest and basic natural ties and relationships has led the Legislature and this Court to make sure, as far as possible, that adoption shall not be granted over parental objection unless that course clearly is justified. The welfare and best interests of the child must be weighed with great care against every just claim of an objecting parent.

"[T]he Court of Appeals has indicated that it will not permit trial courts to decree adoptions over the expressed objection of the natural parent or parents, save in very strong cases." Strahorn, *Adoption in Maryland,* 7 Md. L. Rev. 275, 295. Nevertheless, in strong cases this court has said of Sec. 74: "We should not read into that statute an absolute, arbitrary veto on the part of a parent." *Lagumis v. Ex Parte Lagumis,* 186 Md. 97, 106. In the *Lagumis* case we approved adoption by a stepfather over the objection of the natural father who, on facts not essentially dissimilar to those in the present case, had shown no more interest in his child and worth as a father than Judge Lawlor justifiably found the appellant in the case at bar to have shown. Adoption over parental objection was approved in *Alston v. Thomas,* 161 Md. 617. In *King v. Shandrowski, supra,* there is more than

a hint that the best interests of the child might be found by the trial court on remand to lie in adoption by the custodians of the child, despite the objections of both natural parents.

We think the facts before the chancellor were such as to justify her in finding this to be one of the strong cases in which the welfare and interest of the little girl were best served by permitting the adoption.

Appellant makes two subsidiary contentions as to evidence and procedure. He complains first that he was not allowed to go into details as to his present home life and surroundings. He had shown all the basic facts as to his happy marriage to a good woman, as to his employment as administrative officer of the colored division of a state school for boys in Florida, and as to his home and environment. Of more pertinence, he was not seeking custody of Michilene. We find no error in the ruling.

Next he says Judge Lawlor erred in considering facts she had learned in the earlier case of the adoption of another of Walker's children. Adoption is entirely statutory. Code (1957), Art. 16, Sec. 76, provides that the court may act without investigation in cases "in which the court shall have such intimate and personal knowledge of the facts and circumstances as to enable it to determine the matter without the aid of an investigation * * *." Judge Lawlor acquired a personal knowledge of Walker's character and behavior in the first case and, as she stated on the record to the parties in the case before us, the evidence revealed them to be the same in both instances. There was no prejudice to Walker in what was done.

*Decree affirmed, with costs.*