CRUMP ET UX. *v.* MONTGOMERY ET AL.

[No. 175, September Term, 1960.]

*Decided March 15, 1961.*

*Motion for rehearing filed March 22, 1961, denied April 7, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and MARBURY, JJ.

*Hamilton P. Fox,* with whom were *Hearne, Fox & Bailey* on the brief, for appellants.

*Herman E. Perdue,* for Arthur P. Montgomery and wife and the Wicomico County Welfare Board, three of the appellees.

*Alfred H. Carter, County Attorney,* with whom was *Douglas H. Moore, Jr., Assistant County Attorney* on the brief, for Montgomery County Welfare Board, the other appellee.

HAMMOND, J., delivered the opinion of the Court.

An infant boy, Johnnie, who, for the first eighteen months of his life had been cared for by foster parents, Mr. and Mrs. Lloyd Crump of Montgomery County, was suddenly taken from their home by the Welfare Board of that county and, unknown to them, sent to Wicomico County to the home of Mr. and Mrs. Arthur Montgomery of Salisbury, who planned to adopt the boy.

The Crumps had been most anxious to adopt Johnnie and had been arbitrarily rebuffed by the Montgomery County Board. The day after the child was taken from them the

Crumps filed a petition for his adoption in Montgomery County, which later was dismissed by the court.

The Montgomerys promptly petitioned the Circuit Court for Wicomico County for the adoption of Johnnie and the Crumps, after their Montgomery County action had been dismissed, intervened in the Wicomico County case. The court, Judges Henry, Duer and Taylor sitting, dismissed the Crumps' petition and allowed the Montgomerys to adopt the child.

On appeal from this decision, reported as *Crump v. Montgomery*, 220 Md. 515, 525, we remanded without affirmance or reversal because "the Chancellors adopted the decision and judgment of the Montgomery Board as to which family would better subserve the welfare and best interests of Johnnie by his adoption, and made no actual finding of their own upon the subject * * * and this duty and obligation cannot be abnegated in favor of any board or person."

After remand the three judges met with counsel for the Crumps, the Montgomerys, and the Welfare Board of Montgomery County and appointed a committee of three, consisting of the Chief Probation Officer of the Juvenile Courts for the First Circuit and the Directors of the Somerset and Dorchester County Welfare Boards to make a complete study of, and report to the court on, the "home situations" of the potential adoptive couples. The court instructed the committee in detail on the day of this pre-trial conference and these instructions were included in a stipulation then prepared.

The committee procured the services of a leading Baltimore psychiatrist to examine the Crumps, the Montgomerys, and Johnnie and those of a psychologist of high standing to evaluate the four adults. Full reports were submitted to the court by the committee, the psychiatrist and the psychologist.

Two other psychiatrists filed reports in the case. One was employed by the Crumps, the other by The Maryland Children's Aid Society, Inc. of Baltimore. The Crumps also employed a psychologist who testified. The Crump experts thought Johnnie should go to the Crump household. The other experts were of the firm belief that Johnnie should

remain with the Montgomerys, where he has been since he was taken from the Crumps.

The Director of Control Services of the Maryland Children's Aid Society made a report and testified. Her conclusion was that "Johnnie is well placed and well integrated in the Montgomerys' home, and that to remove him would cause serious or irreparable damage to the child." The Montgomery family doctor and a Wicomico County Welfare Board social worker were of opinion the child should remain with the Montgomerys.

The record makes it clear that the three judges carefully evaluated the various voluminous reports and the testimony which covered all phases of the lives, character, traits and intelligence of the Crumps, the Montgomerys, and Johnnie and, taking all factors and interrelations into deliberate consideration, reached their independent conclusion that the boy's best interests and welfare would be subserved by keeping him with the Montgomerys permanently as their child. We find the record to contain ample support for their conclusion; and we share their regret that "the transfer of Johnnie from the Crumps' home to the Montgomery home was inefficiently managed and badly handled" and agree with them that "had the Montgomery County Welfare officials used some tact and diplomacy in dealing with the Crumps that the transfer of the child could have taken place in orderly fashion, avoiding this lengthy and expensive litigation."

*Decree affirmed, with costs.*