HANEY ET UX. *v.* KNIGHT

[No. 82, October Term, 1950.]

[REDACTED]

*Decided February 9, 1951.*

[REDACTED]

The cause was argued before MARBURY, C. J. and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*John G. Rouse, Jr.* and *C. Osborne Duvall,* with whom were *Rouse & Morton,* on the brief, for appellants.

*R. Tilghman Brice, III,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Anne Arundel County, in equity, denying a petition for the adoption of an infant and awarding custody of the child to its natural mother.

Helen Knight, a resident of Greene County, Virginia, gave birth to an illegitimate child on March 12, 1949. She was then eighteen years of age, and the father of the child had married another girl. She was one of a family of sixteen, although she had lived from the age of seven in the home of her Sunday School teacher. On March 20, 1949 she executed an "entrustment agreement" in favor of the Greene County Board of Public Welfare,

relinquishing the child to its permanent care and custody so "that the child may be placed for adoption in a carefully selected home", and authorizing it "to place her in a temporary foster home or institution until arrangements are made for adoption and then to act with full custody of the child." On April 15, 1949, Mrs. Brown, the superintendent of the Greene County Board, placed the child in the custody of Mr. and Mrs. Haney, a childless couple resident in Anne Arundel County, Maryland. Mrs. Brown was acquainted with them because Mr. Haney's parents reside in Greene County, where he grew up, and Mrs. Haney's parents in an adjoining county. Mr. Haney was a Sanitary Engineer employed by the Howard County Metropolitan Commission at a salary of about $7,000 a year. He lived in a substantial home at Harundale, which he was buying. The Haneys executed a "Placement Agreement" dated April 15, 1949 assuming responsibility "with the intention of adopting [her] if we find [her] to be a child whom we want to make permanently ours". They agreed, however, not to "commence court proceedings for the adoption without the consent of the Department, and we understand the Department will not consent to adoption until the child has lived with us for one year."

On October 18, 1949, the Greene County Board instituted a proceeding in the Juvenile and Domestic Relations Court of Greene County praying that jurisdiction be assumed on the ground that the child was "a dependent child and in need of the care and protection of the state in that she is a dependent child placed by her mother in the custody of Greene County Department of Public Welfare." Helen Knight appeared by counsel and on October 25, 1949 the court assumed jurisdiction, and passed an order committing the child to the Greene County Board. However, on appeal to the Circuit Court of Greene County the court on November 29, 1949 "entered the following verdict, to-wit: 'case dismissed'." On the same day the Greene County Board executed

and acknowledged a consent to adoption of the child by Mr. and Mrs. Haney.

On January 27, 1950 a petition for adoption and change of name was filed by the Haneys in the Circuit Court for Anne Arundel County. The petition alleged that Mr. Haney was then employed by the Wilson T. Ballard Company in Baltimore as a resident engineer. Attached to the petition was the consent previously executed by the Greene County Board. The court ordered an investigation and report by the Anne Arundel County Welfare Board, which was duly made on March 15, 1950. It recommended that the adoption petition be granted. It is conceded that the Haneys are estimable people, their home and home life are eminently satisfactory, and that the child is happy and well taken care of.

On March 28, 1950, Helen Knight was married to William Harvey, a resident of Charlottesville, Virginia, then eighteen years of age. On the following day she appeared, through counsel, in the Anne Arundel County proceedings and was made a party, although notice had not been given by summons or publication. She filed an answer opposing the adoption and revoking . "any and all consents heretofore given by her for the adoption of her infant daughter". The case came on for hearing on April 27, 1950. Testimony was given by Mrs. Brown, Mr. and Mrs. Haney, Mrs. Harvey, Mr. Harvey, and William Knight, the father of Mrs. Harvey. Thereafter, the chancellor filed an extensive opinion and on May 25, 1950 signed a decree denying the petition and awarding custody to Mrs. Harvey. Appeal was taken to this Court and it was agreed that custody of the child should remain with the appellants pending the appeal. At the argument here it was admitted that after the decree was signed Mr. and Mrs. Haney moved to Charlottesville, Virginia, where he is now employed and permanently resides, taking the child with them.

The case presents at the outset certain questions of jurisdiction. Adoption affects the status of both the

adoptors and the person adopted, and it has been said that "jurisdiction to adopt would seem to depend strictly on common domicile of both parties, since the status of both is affected." *Beale, Conflict of Laws,* § 142.2. The learned author admits, however, that the authorities generally hold otherwise. See note 26 Cornell L. Q. 460 and Restatement, Conflict of Laws, § 142. In *Waller v. Ellis,* 169 Md. 15, 179 A. 289, we held that under the statute then in effect the fact that the adoptors were domiciled in Delaware did not oust the jurisdiction of the court in Maryland where the child resided with her grandparents. The present statute, Code (1947 Supp.), Article 16, Section 85D, provides that "any person" over the age of 21 years may adopt. Under the Virginia law it would appear that adoptors must be residents of the state where proceedings are instituted. Virginia Code, § 5333b. In the instant case the child is clearly domiciled in Virginia, where the natural mother has always resided, and this is not altered by the fact that custody was given to the Greene County Board, or by it to the appellants. *Sudler v. Sudler,* 121 Md. 46, 51, 88 A. 26, 49 L. R. A., N. S., 860.

The present Maryland statute, Code (1947 Supp.), Article 16, Section 85B, provides: "(Jurisdiction and Venue.) The Circuit Courts of the several counties of this State, sitting in equity, and any court of Baltimore City having equity jurisdiction, shall have jurisdiction of all petitions for adoption under this sub-title. Any such petition may be filed in the county, or in Baltimore City, as the case may be, in which (1) the petitioner or petitioners have their domicile; or (2) the person to be adopted is located; or (3) any lawfully licensed child placement agency, having legal or physical care, custody or control of the person to be adopted is located. Provided, however, that no such petition shall be filed unless either the person to be adopted or the custodian of such person shall be physically within this State and subject to the jurisdiction of the courts thereof". At the time of the hearing the adoptors were domiciled in Maryland

and the child was physically present. It would also appear that the adoptors were the legal custodians of the child by virtue of the "entrustment agreement" and "placement agreement" filed. We think jurisdiction was shown. *Stearns v. Allen*, 183 Mass. 404, 407, 67 N. E. 349; *Wathen v. Ugast*, 79 U. S. App. D. C. 162, 143 F. 2d 160. Nor do we think that jurisdiction, once obtained, was ousted by the fact that the adoptors changed their domicile pending the appeal. If they were well qualified, as is admitted, at the time of the hearing, they did not lose their qualification by a change of residence or employment.

Before adoption can be decreed, however, it would appear that as a general rule a proper consent must be filed. Article 16, Section 85G provides: "* * * in no event shall an interlocutory or final decree of adoption be made without having the consents required by this section unless for reasons satisfactory to the court, it shall appear proper to dispense therewith. Consent to any proposed adoption shall be obtained from: * * * (d) the mother of a child born out of wedlock * * * or (g) the executive head of any public or private child care or child placement institution or agency which through court action or voluntary relinquishment has been given the care, custody and control of the person to be adopted, including the right to consent to such an adoption * * *." It is at least doubtful whether the "entrustment agreement" could be construed as conferring the right to consent to an adoption. Mrs. Brown testified "that is the regular form for us to receive custody. Of course, we get consent for adoption on a different form. That is the regular entrustment agreement for us to receive custody." Counsel for the petitioners also stated that the agreement was not offered "as a consent". Objection was made to the introduction of the "entrustment agreement" in evidence as an authorization of consent on the ground that it was not acknowledged before a notary and was executed on Sunday. It is also contended that the consent executed by the Greene County Board is

invalid because in violation of the provision in the "placement agreement" that the Board would not consent to adoption until the child had been with the Haney's for one year. We find it unnecessary to pass upon these questions.

Section 85H provides that "in no event shall a consent executed by a natural mother before the end of the first thirty days of the child's life constitute a waiver of the requirement of notice provided for in this section." The notice specified in that section is "to any person or persons whose consent is necessary thereto." Section 85G provides that "any consent obtained under the provisions of this section may be revoked and cancelled at any time during the adoption proceedings prior to entry of an interlocutory decree of adoption." Section 85A declares as a matter of policy that the adoption procedures have as their purpose "the three-fold protection of (1) the adoptive child, from unnecessary separation from his natural parents and from adoption by persons unfit to have such responsibility; (2) the natural parents, from hurried and abrupt decisions to give up the child; and (3) the adopting parents, by providing them information about the child and his background, and protecting them from subsequent disturbance of their relationships with the child by natural parents." While the authorities are not in accord, the weight of authority seems to recognize the right of a parent to withdraw consent down to the time of decree. See notes 2 A. L. R. 2d 887, 892; 156 A. L. R. 1011; 138 A. L. R. 1038. Our statute seems to adopt that view. We agree with the chancellor that there were no satisfactory reasons to dispense with the consent of the natural mother under the circumstances.

Upon the question of custody, however, different principles apply. Cf. *Connelly v. Jones,* 165 Md. 544, 170 A. 174 and In re Oelberman, 167 Pa. Super. 407, 74 A. 2d 790. Under our law it is clear that the welfare of the child is of paramount importance. *Dietrich v. Anderson,* 185 Md. 103, 117, 43 A. 2d 186; *Burns v. Bines,* 189 Md. 157, 162, 55 A. 2d 487, 57 A. 2d 188. In opposing the

adoption, the mother withdrew whatever consent to adoption she may have given, but she has never denied that she authorized the Greene County Board to assume permanent custody, although she prayed for custody in the answer filed in the adoption proceedings. Whether she could legally withdraw that authorization might depend, to some extent, upon the Virginia law, as would the question as to the effect of the decision of the Virginia court in the case involving dependency. In any event, we think the evidence before us is too meagre to say with assurance that the custody of the child should now be given to the mother. It appears that she was married on the day before her answer was filed, that both she and her husband are employed at a Howard-Johnson restaurant, and they are living in one room. But the conditions of their home and home life have not been investigated by any agency. All of the interested parties are now in Virginia; the custodians of the child, the child, the natural mother and her husband are residing in Charlottesville. Under the circumstances we think custody should remain with the appellants unless and until the Virginia courts should decide that the custody should be awarded to the mother.

*Decree affirmed in part, reversed in part, costs to be equally divided between the parties.*