664 A.2d 443

**In re ADOPTION/GUARDIANSHIP NO. 11137 IN the CIRCUIT COURT FOR MONTGOMERY COUNTY.**

**No. 1924, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 7, 1995.

310

Murray L. Deutchman, Rockville, for appellant.

Walter H. Madden, Rockville, for appellees.

Argued before ALPERT, CATHELL and HOLLANDER, JJ.

CATHELL, Judge.

Appellant, Seanna B., appeals from a Decree of Final Adoption entered on September 2, 1994, in favor of appellees, Mr. and Mrs. B.,[1] by the Circuit Court for Montgomery County (Miller, J., presiding). She challenges the validity of her consent thereto, and the propriety *vel non* of the court's order, setting forth the following issues for our consideration:

 1. Whether the Court properly entered a Decree of Adoption from a procedural standpoint.

---

[1]. Appellees are appellant's adoptive parents. They sought to adopt their grandchild, appellant's natural child.

2. Whether the Consent to Adoption was procured by duress or undue influence.

3. Whether there was a valid revocation of the Consent.

4. Whether the lower court's factual findings prohibit the legal conclusion that the Consent was valid.

We shall reverse.

Appellant gave birth to her first child (the "child") on October 27, 1985. In November of 1988, an Order was entered in the Circuit Court for Montgomery County appointing appellees, the child's grandparents and appellant's parents, his co-guardians, with appellant's consent. This was later renewed on October 12, 1990, again with appellant's consent. The sole purpose of the guardianship was to provide the child with medical insurance under the grandparents' coverage.

In August of 1992, appellees, *pro se*, filed a document entitled "Petition for Independent Adoption" with the trial court, using a form the copy of which was obtained by Mr. B. from a book at the local library. At the time of the filing, appellees did not have appellant's consent and knew that they would have to "work on her" to obtain it. Moreover, appellees made no effort to inform appellant (their own daughter) that they were attempting to adopt her child. Thus, appellant was completely unaware that the petition had been filed. Additionally, no show cause order, as required, was issued to inform her thereof.[2]

Later, on January 11, 1993, appellant, still unaware of the pending litigation, before a notary, signed a document presented to her by her father, entitled "Consent to Adoption and Waiver of Notice of Process." This form was also obtained from a book at the library. Both parties differ in their account of the events of that day. Appellant states that she, still unaware of appellees' efforts to adopt the child and of their prior initiation of adoption proceedings, was called to her parents' home. She was accompanied there by a classmate,

---

2. *See* Maryland Rule D74(c), to be discussed, *infra*.

Kathy Provost, who also testified at the hearing on appellant's Motion to Revoke her Consent.

Upon her arrival at her parents' house, appellant was greeted by her father's request that she "sign the papers." Appellant testified that she did not know the papers to which he referred and, forestalling her father's efforts, indicated to him her desire to discuss the matter at a later time. Mr. B., however, would not be put off; he stated, "You are going with me, and you're going now." At that point, appellant and Provost, in one car, and Mr. B., in another, drove to a notary not far from appellees' home. At the notary, more discussion took place, culminating in appellant signing the document.

Provost testified that appellant was very upset by the entire incident and felt pressured by her father's machinations. When appellant and her father exited the place wherein the two entered to sign the "papers," appellant is said to have told her father "that she was going to try to get it overturned," to which he responded that she would be unsuccessful; "she had already lost her right."

Mr. B. offered contrary testimony—appellant is said to have indicated to him, on January 11, 1993, her readiness to sign. He testified that he asked appellant if she was certain of her decision and appellant responded, "Yes." Mr. B. further stated that he had in no way forced her to sign the document and denied that appellant told him she would get the consent set aside. According to him, appellant signed the consent voluntarily and without, at any time, revoking or expressing an intent to revoke.

Appellant did not learn of the pending adoption proceeding until June of 1993, approximately one to two days before a scheduled hearing at which she, appearing *pro se*, objected to the adoption and asked the trial court to declare her consent to have been revoked. She alleged that her consent had been obtained by duress and undue influence and that, alternatively, she had revoked it immediately thereafter. A continuance was granted in order for the parties to obtain counsel. Subsequently, a hearing on the issue of consent revocation was held

on July 27, 1994, after which the trial court took the matter under advisement. On August 4, 1994, the court issued an Opinion and Order wherein it held that the evidence fell "far short of the clear and convincing proof necessary to show that [appellant] was deprived of her free will and that she was the victim of her father's duress and undue influence." Turning to the revocation of her consent, the court stated: "Even assuming that [appellant] told her father [that she would get the consent "turned around"], in the Court's opinion this was not an oral revocation of her consent, but a statement of her future intention to seek revocation of that consent...." Appellant's Motion to Revoke her Consent was therefore denied, and without any further hearing or any further opportunity for appellant to challenge the adoption, or, in fact, any further hearing in reference to the feasibility of the adoption itself, a final decree of adoption issued on September 2, 1994. Appellant filed this timely appeal therefrom.

## THE STANDARD OF REVIEW

■ The scope of review of a trial court's decision in adoption proceedings is generally limited to whether the trial court abused its discretion or whether the findings of fact by the trial court were clearly erroneous. *Coffey v. Dep't of Social Servs.*, 41 Md.App. 340, 346, 397 A.2d 233 (1979). If it appears that the chancellor erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. *Davis v. Davis*, 280 Md. 119, 126, 372 A.2d 231, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299, *reh'g denied*, 434 U.S. 1025, 98 S.Ct. 754, 54 L.Ed.2d 774 (1977). The reviewing court, however, must exercise its best judgment in determining the ultimate question of whether the chancellor abused his discretion in determining what is best for the welfare, benefit, and interest of the child. *Nutwell v. Prince George's County Dep't of Social Servs.*, 21 Md.App. 100, 107, 318 A.2d 563 (1974).

## THE LAW

■ As in custody cases, the overriding consideration that must be addressed in each adoption case is the welfare

and best interests of the adoptive child.[3] *In re Adoption/Guardianship No. A91–71A,* 334 Md. 538, 559, 640 A.2d 1085 (1994); *Sider v. Sider,* 334 Md. 512, 530 (1994); *Lippy v. Breidenstein,* 249 Md. 415, 420, 240 A.2d 251 (1968); *Beltran v. Heim,* 248 Md. 397, 401, 236 A.2d 723 (1968); *Walker v. Gardner,* 221 Md. 280, 284, 157 A.2d 273 (1960); *Crump v. Montgomery,* 220 Md. 515, 525, 154 A.2d 802 (1959), *aff'd,* 224 Md. 470, 168 A.2d 355 (1961); *King v. Shandrowski,* 218 Md. 38, 43, 145 A.2d 281 (1958); *Winter v. Director of the Dept. of Pub. Welfare,* 217 Md. 391, 396, 143 A.2d 81, *cert. denied,* 358 U.S. 912, 79 S.Ct. 242, 3 L.Ed.2d 233 (1958); *Ex parte Frantum,* 214 Md. 100, 103, 133 A.2d 408, *cert. denied,* 355 U.S. 882, 78 S.Ct. 149, 78 S.Ct. 149, 2 L.Ed.2d 112 (1957); *Anderson v. Barkman,* 195 Md. 94, 97, 72 A.2d 709 (1950); *Falck v. Chadwick,* 190 Md. 461, 467, 59 A.2d 187 (1948); *Atkins v. Gose,* 189 Md. 542, 548, 56 A.2d 697 (1948); *White v. Seward,* 187 Md. 43, 48 A.2d 335 (1946); *In re Adoption No. 90072022/CAD,* 87 Md.App. 630, 638, 590 A.2d 1094 (1991); *Weinschel v. Strople,* 56 Md.App. 252, 263, 466 A.2d 1301 (1983); *Lloyd v. Schutes,* 24 Md.App. 515, 521, 332 A.2d 338 (1975); *Nutwell,* 21 Md.App. at 105, 318 A.2d 563; *Schwartz v. Hudgins,* 12 Md.App. 419, 424, 278 A.2d 652 (1971); *Goodyear v. Cecil County Dep't of Social Servs.,* 11 Md.App. 280, 283, 273 A.2d 644, *rev'd on other grounds,* 263 Md. 611, 284 A.2d 426 (1971). The determination of a child's best interests is to be made as of the time the adoption decision is made, no earlier. *Crump,* 220 Md. at 525, 154 A.2d 802.

By the same token, however, the rights of the natural parent or parents, though not absolute or of equal import, must be as carefully guarded as those of the child, *Winter,* 217 Md. at 396, 143 A.2d 81; the right to raise one's own child, "recognized by constitutional principles, . . . is so fundamental that it may not be taken away unless clearly justified," *In re Adoption/Guardianship No. 10941,* 335 Md. 99, 112, 642 A.2d

---

**3.** Financial and material considerations should play no part in the grant or denial of an adoption decree. *See Alston v. Thomas,* 161 Md. 617, 620, 158 A. 24 (1931).

201 (1994). For that reason, there is a presumption that a child's interests will be best served in the care of the natural parent. *Sider v. Sider,* 334 Md. 512, 530, 639 A.2d 1076 (1994); *In re Adoption/Guardianship No. A91–71A,* 334 Md. at 560, 640 A.2d 1085; *Ross v. Pick,* 199 Md. 341, 351, 86 A.2d 463 (1952). "The justification for this presumption is the belief that the parent's natural affection for the child creates a greater desire and effort to properly care for and rear the child than would exist in an individual not so related." *In re Adoption/Guardianship No. A91–71A,* 334 Md. 538, 560, 640 A.2d 1085 (1994) (citing *Melton v. Connolly,* 219 Md. 184, 188, 148 A.2d 387 (1959)). *See Lloyd v. Schutes,* 24 Md.App. 515, 522, 332 A.2d 338 (1975). The rights of the natural parent or parents, as we have said, are subject to the best interests of the child. *Courtney v. Richmond,* 55 Md.App. 382, 392, 462 A.2d 1223 (1983). It is because "the parental rights of the natural mother and father ... [are] 'far more precious than property rights' ... [that they are] protected by the due process clause of the Fourteenth Amendment." *In re Adoption No. 85365027/AD,* 71 Md.App. 362, 366, 525 A.2d 1081 (1987) (quoting *Stanley v. Illinois,* 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972)).

 By the grant of an adoption decree, a natural parent's rights to a child are terminated and a wholly new parent-child relationship is created, *McGarvey v. State,* 311 Md. 233, 240–41, 533 A.2d 690 (1987); a natural parent is made, in essence, a "legal stranger" to his or her child. *Walker,* 221 Md. at 284, 157 A.2d 273; *Coffey,* 41 Md.App. at 347, 397 A.2d 233. Thus, to divest a parent's rights to his or her child and vest them in another is a drastic procedure that must be strictly scrutinized and clearly justified lest a parent be improperly deprived of that child. *See In re Adoption/Guardianship No. A91–71A,* 334 Md. at 560, 640 A.2d 1085 ("[B]ecause adoption carries with it a finality not present in a custody decision, it is even more imperative that the decision be made with due regard to the rights of the natural parent."). "The welfare and best interests of the child must be weighed with great care against every just claim of an

objecting parent." *Walker,* 221 Md. at 284, 157 A.2d 273. *See also Atkins,* 189 Md. at 550, 56 A.2d 697 ("[T]he laws do not mean to deprive parents of their own children except under extraordinary conditions....."). Indeed, a parent's inherent right to raise and care for his or her child will not be denied unless forfeited by his or her own acts or conduct, or by voluntarily consenting to the custody of the child being vested in a third party, unless the best interests of the child *dictate* to the contrary. *Ex parte Johnson,* 247 Md. 563, 569, 233 A.2d 779 (1967).

## DISCUSSION

## CONSENT AND THE REVOCATION THEREOF

██ Under the facts presented in the case *sub judice,* we must, in respect to this issue, determine whether or not a natural parent's consent to an adoption was effectively and properly revoked when that parent communicated an intention to revoke to the person to whom the consent was being given. Given the importance of the interests involved, *i.e.,* a relationship between a parent and a child, we hold that, when such an expression of revocation is made, it is effective as of the time it is communicated and, if done so timely, *i.e.,* within thirty days, is effective to nullify a previously obtained consent to adoption.

The consent executed by appellant in the case *sub judice* read as follows, in pertinent part:

### CONSENT TO ADOPTION AND WAIVER
### OF NOTICE OF PROCESS

I, [appellant], birth parent of minor child ... born on October 27, 1985, hereby certify that I freely and voluntarily consent to join the aforegoing Petition for Independent Adoption. I understand that my consent may be revoked at any time up to ~~90 (ninety)~~ *30 (thirty )* S I B [apparently, appellant's initials] days from the filing of the Consent to

Adoption or anytime before a final decree of Adoption is entered, whichever occurs first.[4]

The conspicuous absence from the consent of any instructions regarding how appellant might exercise her right to revoke calls into question whether appellant had any meaningful opportunity to do so. *See In re Adoption No. 10087,* 324 Md. 394, 421, 597 A.2d 456 (1991), where the Court of Appeals reasoned:

> [T]he consents contain a statement notifying the parents of their right of revocation. No instructions are included, however, which would advise them how to go about doing so.... [N]o information is given on the face of the consents which would enable a parent to recant.... From these facts, it is questionable whether the natural parents had a meaningful opportunity to revoke.

Appellant asserts that she expressed her intent to revoke orally to her father immediately following the execution of the consent. In this regard, however, we are cognizant that Maryland Rule 8–131(a) provides that an appellate court will not consider that which has not first been duly addressed by the trial court. The trial court in the instant case assumed, without deciding, that appellant had expressed words of revocation to her father on January 11, 1993, finding that they constituted an intent to revoke in the future but not a revocation, and, thus, did not rise to the level sufficient to revoke the consent. The occurrence *vel non* of the conversation following

---

4. The italicized and stricken portions of the consent represent the amendments made to the document. There is some discrepancy in testimony regarding the striking out of the number 90 and its replacement with the number 30 (to abide by recent changes made to Maryland Code (1984, 1991 Repl.Vol., 1994 Cum.Supp.), § 5–311 of the Family Law Article (FL)). Mr. B. testified at the hearing on appellant's Motion to Revoke her Consent, that, when he went to file it, he was informed by the clerk that the law anent revocation had been changed from 90 days to 30 days. At that point, he was told that he could change the numbers and have appellant initial same. He made the change in the clerk's presence and indicated that, on January 12, 1993, the day after the Consent was signed, he took it to appellant who initialed the document. Appellant proffered that the document had not been brought back to her for initialing.

the notarization of the consent form was not decided by the court. If the court had found that appellant told her father that she would revoke the consent, then we perceive that the consent was, in fact, thereby revoked and dismissal of the Petition for Adoption was mandated.

We find support for our decision in *In re Adoption No. 85365027/AD, supra,* 71 Md.App. 362, 525 A.2d 1081. There, the adoptive parents, with knowledge of the natural parent's desire to revoke her consent, met with the trial judge *ex parte* and, without informing the judge of the natural mother's intent to revoke, obtained the judge's signature on the decree of adoption before the revocation could be filed with the court. Under those circumstances, we reasoned that the adoptive parents' "rush to the courthouse steps" was not dispositive of the issue of the enforceability of the mother's revocation. "[S]ocial policy in adoption cases, unlike that in commercial cases, is not served by rigid adherence to the doctrine of 'First in time, first in right.'" 71 Md.App. at 371, 525 A.2d 1081 (footnote omitted). We reasoned that it was doubtful that the trial judge, armed with knowledge of the natural mother's desire to revoke, would have signed the final order of adoption.

An analogous situation is presented by the case *sub judice.* If it is found that appellant had communicated her desire to revoke her consent to her father at the time and in the manner in which she alleges, it was sufficient to put him on notice of her objection to the adoption and any attempt to proceed with the adoption thereafter was improper. The trial court erred in concluding that appellant's communication, if in fact made, was not sufficient to put Mr. B. on notice.

As we have stated, the nature of the parent-child relationship is of such importance, *see In re Adoption/Guardianship No. A91–71A, supra,* that courts should act to preserve its integrity in the best interests of the child. To this end, *any* words that indicate that a natural parent does not intend to relinquish his or her rights to the child, if found by a trial court to have been timely communicated to the petitioner

or consentee, must be broadly construed as tantamount to the revocation provided for in Maryland Code (1984, 1991 Repl. Vol., 1994 Cum.Supp.), § 5–311 of the Family Law Article (FL). That section is completely silent as to the manner in which a revocation is to be communicated and to whom it is to be addressed. The consent executed in the case *sub judice* is, itself, similarly silent regarding the method of revocation. We note that the "requirement of consent . . . is intended for the protection of the natural parental relationship from unwarranted interference by interlopers, and to insure the opportunity to safeguard the best interests of the child. . . ." 2 Am.Jur.2d *Adoption* § 24 (1962). The trial court erred in interpreting appellant's statement on January 11, 1993, as indicative of future intent. If said, it clearly evidenced her desire to revoke the consent she had just given to her father, the only person, as far as she knew or could have known, who was involved in the matter, and, under FL § 5–311, it was timely.

Were we to decide this case solely on the ground that appellant's revocation, if communicated, was timely, we would remand to the trial court for further proceedings to determine the occurrence *vel non* of the conversation in which appellant revoked her consent. Given, however, the procedural deficiencies caused by appellees with which this case is fraught, we shall reverse and focus our remaining discussion primarily on the additional reasons for our decision. We shall begin by looking to the requirements attendant upon proceeding under the provisions for adoption set forth in the Family Law Article.

## PROCEDURAL CONSIDERATIONS

Adoption in Maryland was not provided for at common law. *Carroll County Dept. of Social Servs. v. Edelmann,* 320 Md. 150, 174, 577 A.2d 14 (1990); *Winter,* 217 Md. at 395, 143 A.2d 81; *Falck,* 190 Md. at 467, 59 A.2d 187; *Atkins,* 189 Md. at 548, 56 A.2d 697; *Spencer v. Franks,* 173 Md. 73, 81, 195 A. 306 (1937). Rather, it is a creature of more contemporary origin, finding its genesis in legislation. FL § 5–311 and § 5–

312 set forth the two methods by which adoption may be accomplished in this State. The former deals with "consent adoptions," or adoptions whereby, in the absence of a prior judicial termination of a natural parent's rights, the natural parent or parents consent to the adoption of the child by a third party. *See Haney v. Knight,* 197 Md. 212, 78 A.2d 643 (1951); Maryland Rule D73 ("A decree of adoption . . . shall be entered only with the consents prescribed by Code, Family Law Article, § 5–311 . . . or without such consents when permitted pursuant to Code, Family Law Article, § 5–312, § 5–313 . . . ."); FL § 5–311. FL § 5–311, "Required consent; revocation," provides the following:

(a) *In general.*—Unless the natural parents' rights have been terminated by a judicial proceeding, an individual may not be adopted without the consent of:

(1) the natural mother;

(2) the natural father;[5] and

(3) the individual, if the individual is at least 10 years old.

Within the scheme envisioned by FL § 5–311, however, a duly executed consent may be withdrawn. Subsection (c) reads:

(c) *Revocation of consent.*—(1) Except as provided in paragraph (2) of this subsection, within 30 calendar days after the required consent to an adoption is signed the individual or agency executing the consent may revoke the consent.

(2) An individual to be adopted may revoke the individual's consent at any time before a final decree of adoption or an interlocutory decree of adoption is entered.

(3) Except as provided in paragraphs (1) and (2) of this subsection, the required consent to an adoption filed under this section may not be revoked at any time by the individual or agency executing the consent.

Thus, those seeking to adopt the child must obtain the requisite, unrevoked, consent in order to prevail on their petition. As we have indicated, the statute is silent as to the means by

---

5. In the case *sub judice,* the child's natural father is unknown.

which revocation may be effectuated, especially where, as here, the proposed adoptive parent has not summonsed, nor served with any show cause order, nor in any other way apprised the natural parent of the pending litigation. Other than by informing the adoptive parent of the litigation, how is a consent of a natural parent to be withdrawn in the absence of litigation, or in the absence of knowledge of litigation?

A nonconsensual adoption, on the other hand, places a much greater burden of proof upon the adoptive parent or parents. This second method allows for the adoption of a child where the consent of the natural parent is "affirmatively" withheld, such as by the filing of a Notice of Objection by the natural parent. *See* FL § 5–312(a)(1). In the absence of such consent,

> a court may grant a decree of adoption to a ... relative ... who has exercised physical care, custody, or control of a child for at least 6 months, if by clear and convincing evidence the court finds that:
>
> (1) it is in the best interest of the child to terminate the natural parent's rights as to the child;
>
> (2) the child has been out of the custody of the natural parent for at least one year;
>
> (3) the child has developed significant feelings toward and emotional ties with the petitioner; and
>
> (4) the natural parent:
>
> (i) has not maintained meaningful contact with the child during the time the petitioner has had custody despite the opportunity to do so;
>
> (ii) has repeatedly failed to contribute to the physical care and support of the child although financially able to do so;
>
> (iii) has been convicted of child abuse of the child.

FL § 5–312(b). It is clear that appellees would have had difficulty satisfying at least part of the requirements mandated by the statute in respect to nonconsensual adoptions, as we shall discuss, *infra*.

A court may also, in making its determination as to what would best serve the interests and welfare of the child, order that an investigation be conducted and a report prepared that details the child's emotional and physical well-being. FL § 5–312(c)(2). Such a report was ordered and prepared in the present case. Appellee did not apprise appellant of that report prior to the time appellee sought her consent nor was she apprised of it after her consent was obtained. Only when she obtained counsel after continuance of the proceedings in June of 1993, was she informed of the report.

We further note that *any* petition for adoption "shall contain" certain "information" anent the petitioner or petitioners, the adoptive child, and the lack of consent, if applicable. Md. Rule D72. "Upon the filing . . . of a petition for adoption, the court shall enter a show cause order," Rule D74(a), which "shall be accompanied by a pre-captioned notice of objection. . . ." Rule D74(c).

Relative to the case *sub judice*, appellees proceeded under a petition for a nonconsensual, independent adoption. They later filed an amended petition using the same nomenclature. The amended petition specifically averred that appellant's consent had not yet been obtained. The petition was not thereafter amended. By proceeding in this fashion (under FL § 5–312), appellees dispensed with the need to obtain appellant's consent to proceed. But, by the same token, they also subjected themselves to the requirements of that section. Despite this, consent was, seemingly, actively sought. Appellees made no attempt, however, to redesignate the petition to more accurately reflect their actions.

In derogation of Maryland Rule D74, no show cause order was issued when appellees filed their petition to adopt the child. Had it been so forthcoming, appellant would *a fortiori* have been informed of the initiation of the adoption proceedings and of her right to file a notice of objection thereto. Moreover, appellant would have actually been furnished, as required by Maryland Rule D74, with a "pre-captioned" notice of objection form that she could have filed in the proceedings,

rather than orally raising her objection at the June 1993 hearing. FL § 5–312(a), the section under which the appellees apparently proceeded in this case,[6] notes that "it applies only to independent adoptions in which a natural parent withholds consent by filing an objection." Issuance of a show cause order would have apprised appellant of one way to object, i.e., by completing and signing the notice of objection and filing it where and when the notice specified. The amended petition filed by appellees upon which the court acted, as we have said, noted in its averments that the "mother ... prefers not to sign the parental consent form at this time . . . ." As we have indicated, there is a real question of whether the consent was, in fact, still valid, i.e., not revoked, when it was filed. In addition to appellees' clear lack of compliance with the procedural requirements, it is, moreover, absolutely clear that appellant informed the court, both personally and by counsel, of her objection to the adoption.

 Appellant was similarly not in any other manner informed of the initiation of the proceedings; she was not contacted at any time. Even when the court ordered an investigation of the matter, appellees failed to inform appellant, with whom they were in frequent contact, of that investigation and of the resulting report. This conspicuous lack of notice clearly prejudiced appellant's ability to preserve her interests. As it stands, therefore, appellees, having failed to comply with numerous notice mechanisms crafted into the adoption statutes, and, having failed to inform her in any other

---

6. The case was not proceeding under FL § 5–313 as that section requires findings by the trial court based upon clear and convincing evidence that "(1) the child is abandoned as provided in subsection (b). . . ." Subsection (b) defines abandonment to be (after a thorough investigation by a child placement agency) where "(1) the identity of the child's parents is unknown and (2) no one has claimed to be the child's natural parent within two months of the alleged abandonment." This clearly is not a case of abandonment. Subsection (2) refers to delinquent children and obviously does not apply. Subsection (3) applies to adoptions arranged through child placement agencies and clearly does not apply to independent adoptions. Subsection (c), "Required considerations," does not apply because it relates back to subsection (1), (2) and (3). Subsection (d) applies only to juvenile adjudications.

manner, cannot now argue that appellant's independent Motion to Revoke was not timely. Under the facts as presented below, appellant was only advised of the hearing the night before it was scheduled to be held. There is no evidence to contradict her assertion that that was when she first learned of the litigation. Because appellees failed to have her summonsed and failed to have the required show cause order issued, there was no opportunity for appellant to "file ... an objection" in the proceeding prior to her appearance in court to enter her objection. We hold that, under circumstances such as those here present, when a natural parent objects to an adoption in open court, she is not also required to file a written objection. To impose such a requirement would elevate form over substance. As we indicate elsewhere, even in the absence of an objection, a nonconsensual, independent adoption may not be granted unless there is clear and convincing evidence that, among other things, the natural parent has not maintained meaningful contact with the child during the time the petitioner has had custody despite the opportunity to do so; has failed to contribute to the physical care and support of the child though financially able to do so; or has been convicted of child abuse of the child.

▮ As we perceive what occurred below, the court held a hearing on the issue of consent, took that matter under advisement, and later determined that the consent had not been revoked because the mother's statement was an expression of future intent. At the time the trial court continued the initial June hearing, the court informed appellant, then *pro se,* that the continuance was granted in order for her to get counsel and that the rescheduled hearing would be on "whether ... there is good cause for you to withdraw your consent after the time prescribed by law." The interlocutory decree rendered by the court similarly limited the rescheduled hearing to consent revocation matters. Even then, however, the court was fully aware of appellant's objections but, nevertheless, without affording her any other opportunity and without, as far as we can see, holding, in a case in which objections had

been raised, any further hearing on the propriety *vel non* of the adoption itself, granted the adoption.

Under the facts and circumstances of this case, we do not perceive clear and convincing evidence that appellant ever failed to keep meaningful contact with the child while he was living with the grandparents. Appellant, in her brief, notes that "throughout the period of time that the minor lived with the grandparents there was extensive and frequent time spent [by the child] with the mother." Appellant also notes in her brief that she, herself, lived with her parents and visited during the relevant periods of time. Appellees, in their brief, do not challenge those assertions. At the hearing on the validity of her revocation, appellant, on cross-examination, repeatedly confirmed that, when the child was at her parents' home, she was in constant and repeated contact with him. No attempt was ever made to refute that testimony.

Moreover, in their original petition, appellees made no allegation that there had been no meaningful contact between the child and appellant or that appellant had had the financial ability to care for the child. Likewise, in their amended complaint, they made no such assertion. Subsequently, when the trial court, without any further hearing, opined, when rendering its final decree of adoption, that it did so "UPON CONSIDERATION of the Petition filed herein, it is this 2d day of September 1994 ... ADJUDGED, ORDERED AND DECREED....", it could not have considered, and apparently did not consider, whether there had been meaningful contact between the child and appellant or whether appellant had the financial ability to support or care for the child, let alone find by "clear and convincing evidence" those above mentioned necessary findings. While it may not be necessary for the trial court to include its finding in the decree of adoption there must be evidence elsewhere in the case that would support such a finding. It is completely absent here. Those matters were simply never presented to the court by the averments in the petition of adoption or in any other manner. Whether there was consent might have been an open question for the court, but the fact that appellant was objecting was clear.

Further, the fact that she had maintained meaningful contact was not, in any way, controverted. The court, on this record, could not have found that such meaningful contact did not exist.

In light of the procedural errors committed by appellees, *i.e.*, the seeking of a nonconsensual, independent adoption while failing to notify appellant, by summons, show cause order, or any other means, of the fact that adoption proceedings were already in progress when she was asked to consent, and the failure timely to notify appellant of the litigation in order that she could file an objection thereto, though having made her objections clear at her first opportunity before the court, and where it is clear, even from these abbreviated proceedings, that appellant has maintained continual meaningful contacts with the child, strict scrutiny of the actions of appellees in these proceedings was especially warranted. We cannot conclude that it was afforded. Due process is an important factor to consider in cases wherein a natural parent's right to raise her child is sought to be cut off, and courts should endeavor to protect this right by closely scrutinizing the notice provided to the natural parent or parents of the initiation of adoption proceedings.

Serious "good faith" questions arise in respect to the obtention of adoption consents when the party attempting to obtain the consent fails to disclose to the natural parent that a nonconsensual, independent adoption is already proceeding, especially where the party concealing the prior initiation of adoption proceedings is in a position of authority in relation to the person whose consent is sought, *i.e.*, a parent. In such instances, courts should be reluctant to disallow a revocation of the consent or to render a decree of final adoption over the natural parents' objection.

In reaching our resolution, we are acutely aware that, when the legislature made its comprehensive revision of the various statutes relating to domestic issues by repealing them and, in their place, enacting the Family Law Article, it stated, in that section of Chapter 296 of the Acts of 1984 relating to adoption,

those matters of paramount concern to it. The legislature first noted:

(B) PURPOSES OF SUBTITLE

THE PURPOSES OF THIS SUBTITLE ARE TO PROTECT:

(1) children from:

(I) Unnecessary separation from their natural parents; and

. . . .

(2) Natural parents from a hurried or ill-considered decision to give up a child.

The previous statute, Md.Code (1981 Repl.Vol.), Art. 16 § 67(a), had provided that the purposes of the article were for the "protection of (1) the adoptive child, from unnecessary separation from his natural parents . . .; and (2) the natural parents, from hurried and abrupt decisions to give up the child."

The Court of Appeals' opinion in *Dawson v. Eversberg*, 257 Md. 308, 313, 262 A.2d 729 (1970), in an adoption proceeding where the mother objected to the adoption noted that

[b]ecause of the harsh consequences of a decree of adoption we have often said that it will not be granted over parental objection unless it is clearly warranted.

There is nothing in the various revisions to the adoption laws since 1970 that nullifies that earlier language.[7] We cannot agree that a decree of final adoption, based upon the facts of this case and its procedural shortcomings, was clearly warranted.

---

7. We are aware that changes have occurred in the past legislative session. *See* Senate Bill 326 and House Bill 715 to take effect on October 1, 1995. Both were approved by the Governor on May 25, 1995. These statutes, however, have no impact on the issues raised in the case *sub judice;* the changes involve adoptions in situations where one parent is convicted of domestic violence against the other. We decide this case pursuant to the statutes extant when it was tried.

Under the totality of the facts of this case, we hold that the adoption should not have been granted. We shall reverse and vacate the decree of adoption entered on September 2, 1994, in the Circuit Court for Montgomery County.

**JUDGMENT REVERSED;**[8] **DECREE OF ADOPTION VACATED; COSTS TO BE PAID BY APPELLEES.**

---

8. Our reversal is not intended to foreclose future adoption proceedings by appellees in respect to the child at issue so long as a proper petition is filed and proper procedures followed.